## COLWELL *v.* ALPENA POWER CO.

1. EVIDENCE — EXPERT AND OPINION TESTIMONY — TIMBER — ESTI-
MATE.

    Though a witness who estimated the amount of timber de-
    stroyed did not claim to be of wide experience as an esti-
    mator, and the proof of his competency was weak, the
    court properly permitted him to testify as an expert.

2. DAMAGES—JUDGMENT.

    Plaintiff brought an action for flooding lands by damming
    back the waters of a lake. In a previous suit he recovered
    for the injury done to these lands as meadow or grass
    lands, claiming that they were productive of blue joint
    grass until defendant flooded them. In the second action
    plaintiff sought to recover for the same loss, treating the
    lands as productive, and gave proof of the value of
    crops which could have been grown upon the soil during
    the subsequent period. *Held*, that the proper measure of
    damages was the rental value of the land, since the re-
    covery in the first action included damages for destroying
    the growing grass, and there was no evidence to show that
    the meadow had grown up and been a second time de-
    stroyed.[1]

3. SAME—SPECULATIVE DAMAGES.

    And where the owner had never devoted the meadow lands
    to any agricultural use, and had never cut grass on the
    ground, permitting his neighbors to take what they wanted
    without payment, damages based on prospective profits
    were too speculative or indefinite.

4. SAME—POWER COMPANIES—DAMS.

    And the rental value was not that of meadow land, but the
    value of land in the condition it was shown to have been
    in when the former judgment was obtained.

Error to Alcona; Connine, J. Submitted October
15, 1915. (Docket No. 121.) Decided March 30, 1916.

[1]As to measure of damages for overflow of lands, see note to
59 L. R. A. 896.

Case by George W. Colwell against the Alpena Power Company, a limited partnership, for flooding plaintiff's lands. Judgment for plaintiff. Defendant brings error. Reversed.

*Henry, Henry & Henry,* for appellant.

*Joseph H. Cobb* and *O. H. Smith,* for appellee.

PERSON, J. Plaintiff is the owner of the south half of the south half of section 3, lot 2, of section 2, and the north half of the northwest quarter of section 11, all in township 27 north, of range 7 east. These, with other lands owned by plaintiff, lie adjacent to Hubbard Lake, in the county of Alcona. At the outlet of the lake is a dam formerly owned by the Alpena City Water Company, and transferred to defendant in September, 1906. This dam was originally used in getting logs out of the lake, but since it passed to the ownership of defendant, it has been employed for the purpose of holding back the water, for use, during dry portions of the year, in the operation of the company's industries at Alpena. It seems that the height of the dam was increased as early as 1903 or 1904, thereby raising the water in the lake above its normal level. It is claimed by plaintiff that the wrongful flooding of his lands has been practically continuous since the dam was raised. This action is brought to recover damages for the overflow during the years 1910, 1911, 1912, 1913. An earlier action was brought by him against the same defendant to recover damages for the overflow during the period from 1903 to 1909, inclusive.

The damages claimed in this case are alleged to have grown out of the destruction of tamarack timber on that portion of section 11 above described, and of a meadow partly on the south half of the south half of section 3, and partly on lot 2 of section 2, together with,

the grass growing thereon. The land on section 11 was not included in the earlier case, and the right of plaintiff to recover the value of such tamarack thereon as has been killed by the water does not seem to be seriously contested. It is objected, however, that one Derosia was permitted to estimate, as an expert, the amount of timber destroyed, without having shown himself qualified to so testify. It must be admitted that the witness did not claim very much experience as an estimator of timber, but he did testify to some experience, and we are not prepared to say that the court was wrong in receiving his testimony.

The principal question in the case is in regard to the damage done the meadow lands and grass. As has been said, these lands were included in the first action, which was begun in February, 1910, and which claimed damages for the destruction of the same meadow, and of the grass thereon. But that action made claim for injuries inflicted during the period from 1903 to 1909, inclusive. Plaintiff obtained a judgment against defendant in that action, and the case was brought to this court. The opinion upon the appeal will be found in *Colwell* v. *Power Co., Ltd.*, 178 Mich. 183 (144 N. W. 516). The first count in the declaration in that case, after describing the lands on sections 2 and 3, contained the following averments:

"By means of said dam and the operation and manipulation thereof, said defendant therein and thereby so operated the same as to prevent the waters from said Hubbard Lake from uninterruptedly flowing into said south branch of Thunder Bay river, and by means of said dam and the operation thereof, raised and maintained the waters in said Hubbard Lake during the years 1905, 1906, 1907, 1908, and 1909, to wit, six feet above its natural height and the waters when so raised and maintained by said dam overflowed the lands of said plaintiff and soaked into said lands, and said waters washed away the banks of plaintiff's lands and

190 Mich.—17.

have destroyed, to wit, ten acres of land by means of washing down the banks and shores of said lake, have overflowed and destroyed the meadow lands and grass and hay growing thereon; have killed and destroyed the elm, ash, cedar, and other woods growing thereon and therein, and thereby have greatly damaged said plaintiff, and said plaintiff, by means thereof without any fault on his part, has suffered great damages to his lands, timber, and meadows during each of said years 1905, 1906, 1907, 1908, and 1909."

The second count charged practically the same injury, except that the period during which it occurred is alleged to have been from the year 1903 to the year 1909, inclusive; and it is further averred in the second count that the lands had been grown up to wild grass and bogs during all of that time. The proofs in that case tended to support the declaration. It was shown that the meadow or marsh covered about 50 acres of land; and that, while it had formerly produced what is called blue joint, a grass of considerable value, it had, since about 1904 or 1905, been continually flooded with water and grown up to cat-tails, water lilies, and bogs.

The present action was commenced early in 1914, and, as has also been said, claims damages to the same meadow lands, and to grass growing thereon during the period from 1910 to 1913, inclusive. The declaration in the present case, after alleging ownership in the plaintiff of the south half of the south half of section 3, and of lot 2 of section 2, charges that the defendant:

"By means of said dam and the operation thereof, as aforesaid, raised and maintained the waters in said Hubbard Lake during the years 1910, 1911, 1912, and 1913, to wit, six feet above its natural height and the waters when so raised and maintained by said dam overflowed the lands of said plaintiff and soaked into said lands, and said waters have destroyed, to wit, the meadow lands and the grass and hay growing thereon;

have killed and destroyed the cedar, ash, elm, tamarack and other woods growing thereon and therein, and thereby have greatly damaged said plaintiff, and said plaintiff by means thereof, without any fault upon his part, has suffered great damage to his lands, timber, and meadow during all of said years 1910, 1911, 1912, and 1913, to wit, $5,000.".

It will be observed that the same meadow is claimed to have been destroyed during the later period, that was claimed to have been destroyed during the earlier one; and that the loss of grass and hay growing thereon is averred after the proofs in the other case had shown the land to be grown up to bogs, cat-tails, and water lilies. This anomalous situation led the defendant to give notice, under his plea of the general issue in this case, of the former recovery, and now causes him to insist that the plaintiff is again attempting to recover damages for the same injuries to the meadow lands for which he recovered damages in the previous case. The trial court overruled defendant's objections in this behalf, and received such testimony as the plaintiff offered. These rulings are assigned as error.

Counsel for defendant is clearly wrong in this contention. In the former case the recovery was for injuries sustained during the period from 1903 to 1909, inclusive. The recovery sought in the present action is carefully limited by the declaration to such injuries as were inflicted during the period from 1910 to 1913, inclusive. The dates mentioned are materially descriptive of the injuries for which compensation is sought. And, however improbable it may seem that a meadow once destroyed, and thereafter continually flooded, could be destroyed again, and that a crop of grass could have come from lands continually covered with water and grown up to bogs, cat-tails, and water lilies, yet it was a mere matter of proof. If the plaintiff could have shown in the present case that the meadow had been a second time destroyed, and that grass growing

thereon during the period named in the declaration had been lost through the wrongful overflow, he had a perfect right to do so, regardless of the former recovery. But he was unable to make such proofs. The testimony in the present case tends to show that the meadow was destroyed, once for all, so far as it has been destroyed, back in 1904 or 1905, and that no grass has grown upon the land since that time. In other words, the plaintiff has failed to show, in regard to this so-called meadow land, the injuries specifically alleged in his present declaration.

The damages which plaintiff really desired to recover in the present action were not damages for the destruction of the meadow, nor for the loss of any grass growing thereon, but they were damages for being deprived of the use of the land during the period mentioned in the declaration. His theory, however, as to the measure of such damages was erroneous. He did not attempt to prove the growth of any grass since the beginning of the former action; his proofs, on the contrary, tended to show that none had grown; but he did try to establish his loss in being deprived of the land, by showing the probable value of each crop of grass, had any grown, during the years 1910, 1911, 1912, 1913. This method was too speculative and uncertain. The plaintiff had never devoted this land to any particular use. He had never cut any grass thereon himself, but had permitted his neighbors to take it as they wished, without compensation. The proper measure of his damages, under the circumstances, would be the rental value of the land. 3 Sedgwick on Damages (9th Ed.), § 942; 4 Sutherland on Damages (3d Ed.), § 1049; 13 Cyc. p. 153; 8 R. C. L. p. 483; *Hoffman* v. *Railroad Co.*, 114 Mich. 316 (72 N. W. 167) ; *City of Chicago* v. *Huenerbein*, 85 Ill. 594 (28 Am. Rep. 626) ; *Kankakee, etc., R. Co.* v. *Horan*, 17 Ill. App. 650.

But in determining this rental value, the land should

not be treated as having been an existing blue joint meadow at the beginning of the period mentioned in the present declaration, if, as a matter of fact, the blue joint and its seeding had been entirely destroyed previous to that time. It must be remembered that this is the second action for a wrong that is alleged·to have been continuous. All damages that had been suffered during the period covered by the first action belonged to that action, whether they were temporary or permanent. If the meadow, as a blue joint meadow, was wholly destroyed during that period, the damages for such destruction could have been recovered in that action. The rule in *Phelps* v. *City of Detroit,* 120 Mich. 447 (79 N. W. 640), simply means, that as to a wrong which may be discontinued at any time, future injuries that have not yet occurred, shall not be anticipated. In successive actions brought for a continuing wrong, each action takes the situation as it finds it, and permits the recovery of damages for such further injuries, if any, as have occurred during the period covered by it.

It is urged by plaintiff that the measure of damages which he attempted to apply in this case was sanctioned by the opinion of this court in the earlier case; but an examination of the record and briefs in that case shows that the point was not in fact raised nor considered by this court.

The judgment is reversed, and a new trial ordered.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.