PEOPLE *v.* CHARLES WILSON

1. INDICTMENT AND INFORMATION—DEFECTS—WAIVER—TIMELY OBJECTION.

Failure to object to a defect in the information, either before trial or at such time as the court in its discretion permits, waives any defect, either of form or substance, in the information.

2. APPEAL AND ERROR—INSTRUCTIONS TO JURY—PRESERVING QUESTIONS FOR REVIEW—COURT RULE.

Failure to object to the instructions to the jury in a criminal case precludes the nonobjecting party from claiming instructional error for the first time on appeal (GCR 1963, 16.2).

3. SEARCHES AND SEIZURES—PRIOR VALID ARREST—ARREST—OBSERVATION BY POLICE—EVASIVE ACTION.

A person who takes obviously evasive action when he discovers that he is being observed by the police gives the police reasonable cause to believe that he is committing or has committed a felony or that he is in the process of committing a misdemeanor, and, thereby, justifies immediate search and seizure.

4. ARREST—PROBABLE CAUSE—EVASIVE ACTION.

The defendant's arrest was based on probable cause where officers, patrolling in their squad car at 2 a.m., saw the defendant and another man in the recessed doorway of a liquor store with their backs to the street, noticed a light being emitted from the top of the door, giving the appearance that the door was open, and where, on being ordered to "hold it", the de-

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indictments and Informations § 299 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[3, 4, 8] 47 Am Jur, Search and Seizure §§ 52, 53.
 5 Am Jur 2d, Arrest § 45.
[5–7] 5 Am Jur 2d, Arrest § 70 *et seq.*
[9] 31 Am Jur 2d, Expert and Opinion Evidence § 25.
[10–12] 31 Am Jur 2d, Expert and Opinion Evidence § 26 *et seq.*

fendant ran and apparently attempted to draw a gun while being chased by a police officer.

5. ARREST—TIME OF ARREST.
The time an arrest occurred must be determined from all the circumstances surrounding the alleged arrest.

6. ARREST—TIME OF ARREST—INTENT TO SEIZE.
The words "hold it" spoken by a police officer to the defendant did not constitute an "arrest" where the defendant and another man were standing with their backs to the street, in the recessed doorway of a liquor store at 2 a.m.; however, an arrest occurred when the defendant was apprehended, in flight, by the police officer where the defendant began to run after having been told to "hold it" by the police officer.

7. ARREST—TIME OF ARREST.

A police officer's telling a person to "hold it" does not necessarily mean that an arrest has occurred; the words "hold it" are consistent with a desire merely to question the person and do not necessarily connote an intent to take, seize, or detain.

8. SEARCHES AND SEIZURE—PRIOR VALID ARREST—VALIDITY OF SEARCH.
Police officers have the right to search a person arrested for the means or instruments of the crime committed and to seize them or other instruments which that search uncovers once a legal arrest has been made.

9. WITNESSES—EXPERT WITNESS—QUALIFICATION—DISCRETION.
Determination of the qualification of a witness to testify as an expert witness is in the discretion of the trial court; an appellate court will interfere only to correct an abuse of discretion.

10. WITNESSES—EXPERT WITNESS—NARCOTICS—QUALIFICATION.
Determination that a police officer was qualified as an expert to identify narcotics was not an abuse of discretion where the officer did not have a degree in chemistry nor any special theoretical education in the analysis of narcotic drugs, but was nearing a degree with a minor in chemistry, was trained by a civilian chemist in his employment, and had analyzed hundreds of substances for the police department.

11. WITNESSES — EXEPRT WITNESS — QUALIFICATION — FORMAL EDUCATION.
One does not have to have formal education to be an expert; he may have acquired special knowledge concerning a subject by reason of his employment.

12. WITNESSES—EXPERT WITNESS—QUALIFICATION—CREDIBILITY.
    Questions concerning an expert witness's qualifications are a
    matter to be weighed by the jury in determining the witness's
    credibility.

Appeal from Recorder's Court of Detroit, Samuel
H. Olsen, J.   Submitted Division 1 June 11, 1970,
at Detroit.   (Docket No. 7,758.)   Decided October
5, 1970.   Leave to appeal denied May 12, 1971.   384
Mich 840.

Charles Melrose Wilson was convicted of posses-
sion of cocaine.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Luvenia D.
Dockett,* Assistant Prosecuting Attorney, for the
people.

*James A. Hathaway,* for defendant on appeal.

Before: DANHOF, P. J., and V. J. BRENNAN and
J. J. KELLEY Jr.,* JJ.

PER CURIAM.   Defendant was arrested on March
8, 1968, on a charge of possession of narcotics in
violation of MCLA § 335.153 (Stat Ann 1957 Rev
§ 18.1123).   After being tried by a jury in Detroit's
Recorder's Court, he was found guilty and sentenced
to not less than three and a half years imprisonment.

The facts of the case are as follows.   At approxi-
mately 2 a.m., two police officers were cruising in a
scout car on Linwood in Detroit when they saw two
men standing in the recessed doorway of a closed
liquor store with their backs to the street.   The
officers observed light being emitted from the top

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

of the door, giving the appearance that the door was open although in fact it was not. The officers stopped their car, emerged, and told the two men—one of whom was the defendant—to "hold it." The defendant broke and ran. One police officer gave pursuit and drew his gun when he thought he saw defendant reach in his pocket for a weapon. Upon apprehending the defendant, the police officer found a revolver on defendant's person.

The narcotics came to the police officer's attention after the defendant's arrest. The officer put the defendant in the back seat of the scout car and, as the officer passed behind the scout car, he saw the defendant drop a green bottle onto the floor of the car. Inside the bottle were four foil packets containing a white powder which was later found to be cocaine. At the station, a pill containing a derivative of barbituric acid was found in the defendant's clothing.

The defendant first alleges as error that the information was fatally defective because it charged him with two offenses in one count. Admittedly, no objection was made to the information either before or during trial. Failure to object before trial or at such time thereafter as the court in its discretion permits has the effect of waiving any defects of form or substance. MCLA § 767.76 (Stat Ann 1954 Rev § 28.1016). Therefore, this issue is not properly before us. *People* v. *Green* (1968), 14 Mich App 250.

Likewise, defendant attempts to raise an objection to the judge's charge to the jury for the first time on appeal. It is contended that the judge treated "possession" synonymously with "control" in his charge and that this is prejudicial since the penalty for a second conviction of violation of narcotics laws varies dependent on whether the first conviction was

for possession or control. The court asked the attorneys out of hearing of the jury if they cared to add anything to the charge. Both the defense counsel and the prosecutor indicated they were satisfied. Defendant may not for the first time on appeal claim error in the instructions. GCR 1963, 516.2. *People* v. *Jew* (1970), 21 Mich App 408; *People* v. *Jefferson* (1969), 18 Mich App 9.

The next assignment of error is that the trial court erred in denying defendant's motion to suppress the cocaine on the ground that it was illegally seized in violation of the Fourth Amendment to the Federal Constitution. The theory put forward in appellant's brief is that the arrest of Wilson was illegal and that the cocaine was inadmissable as the fruits of an illegal arrest. We do not agree.

The evidence in this case easily supports a finding of probable cause to believe that defendant was committing a felony. The defendant's behavior in the doorway, the hour of day, the light shining through the door, the flight from the police officers, and the apparent attempt of defendant to pull a concealed weapon, all served to fortify the officers' belief that defendant was engaged in committing a crime. Of particular importance was the defendant's evasive action when the officer told him to "hold it." In *People* v. *Evans* (1966), 3 Mich App 1, this Court discussed various cases dealing with the legality of an arrest and concluded at page 7 that:

"All of these cases seem to be based upon the theory that when a person, upon discovering that he is being observed by the police, takes obviously evasive action, he gives the police reasonable cause to believe that he is committing or has committed a felony or is in the process of committing a misdemeanor, thereby justifying immediate search and

seizure. This Court concludes, therefore, that the defendant Evans, by evading and hiding from the police, gave them sufficient reason to make immediate search and seizure."

Defendant would circumvent these cases by saying that the arrest occurred when the officer shouted "hold it." No law is cited for that proposition and indeed none can be since an "arrest" must be determined by looking at all the circumstances. We prefer to examine this search on the basis that the arrest occurred when the police officer apprehended the defendant during flight. The words "hold it" are consistent with a desire to merely question an individual and do not necessarily connote an intent to take, seize, or detain. Once it is determined that officers have made a legal arrest, the right to search the person arrested for the means or instruments of the crime committed and to seize them or other instruments which that incidental search uncovers cannot be doubted. *People* v. *Orlando* (1943), 305 Mich 686; *People* v. *Miller* (1928), 245 Mich 115; *People* v. *Licavoli* (1928), 245 Mich 202. Since this search and seizure was incident to a lawful arrest, the defendant had no right to have the fruits of the search suppressed.

Finally, the defendant urges that the prosecution's witness, Alfred Gomez, was not competent to testify as an expert. At the trial, Gomez was called upon to testify as to the contents of the packages seized by the police. In his testimony he indicated that the white powder taken from defendant contained 25.75 grains of cocaine. Defendant now points out that witness Gomez had no degree in chemistry nor any special education in the analysis of narcotic drugs and was therefore not an expert. In *Accetola* v. *Hood* (1967), 7 Mich App 83, 86, this Court said:

"Initially, we note that it was within the province and discretion of the trial court to determine the qualifications of an expert to testify, and that our Supreme Court has, historically, interfered 'only to correct an abuse.' *People* v. *Hawthorne* (1940), 293 Mich 15. Thus, our potential area for review is limited."

When attempting to ascertain the competency of the witness in this case, the court had before it the following facts. Patrolman Gomez was nearing a degree with a minor in chemistry at the University of Detroit; he was trained by a civilian chemist in the course of his employment; and he had analyzed hundreds of substances for the Detroit Police Department. One does not have to have formal education to be an expert, but may have acquired special knowledge concerning a subject by reason of his employment. *Alexander* v. *Mud Lake Lumber Co.* (1908), 153 Mich 70; *Colwell* v. *Alpena Power Co.* (1916), 190 Mich 255. Under the facts of this case we cannot say that the trial court abused its discretion in allowing Gomez to testify as an expert. The questions raised by defendant concerning the witness's qualifications are a matter of weight and credibility for the jury.

Affirmed.