PEOPLE v HALL

PEOPLE v STREET

PEOPLE v LEACH

OPINION OF THE COURT

1. DRUGS AND NARCOTICS—CONTAINERS—JUDICIAL NOTICE.

Police officers are familiar with the practice of carrying narcotics in plastic vials and bags.

2. SEARCHES AND SEIZURES—WITHOUT A WARRANT—NARCOTICS—FURTIVE ACTION—PROBABLE CAUSE.

The presence of two plastic containers in the back seat of a van and the defendant's furtive action of attempting to conceal them justify a reasonable belief on the part of a police officer that a crime was being committed and make permissible a search without a warrant.

3. SEARCHES AND SEIZURES—WITHOUT A WARRANT—PROBABLE CAUSE.

A police officer must act on some fact or circumstance or upon some such information as would create in his mind a reasonable and honest belief that the law was being violated in order to justify a search and seizure without a warrant.

4. SEARCHES AND SEIZURES—WITHOUT A WARRANT—FURTIVE ACTION—PROBABLE CAUSE.

A search of a van and seizure of narcotics, contained in a plastic bottle, even though without a warrant, was justified as based on probable cause where police officers had stopped the van for a traffic violation, one of the officers, while shining his flashlight in the back seat, saw a clear plastic bag and bottle, and one of the defendants, in the back seat, threw his coat over the

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Drugs, Narcotics and Poisons § 44.

[2] 5 Am Jur 2d, Arrest § 31;

47 Am Jur, Searches and Seizures § 18.

[3] 47 Am Jur, Searches and Seizures §§ 14, 16, 18.

[4] 5 Am Jur 2d, Arrest § 31;

47 Am Jur, Searches and Seizures § 19.

[5] 47 Am Jur, Searches and Seizures § 21 *et seq.*

bottle, because although the officer had no reason to be suspicious of the contents of the plastic bottle and bag from the fleeting glance he got of those objects, the fact that the officer did notice those objects was sufficient to give him probable cause to believe that the defendant was attempting to hide the contents from him.

DISSENT BY T. M. BURNS, P. J.

5. SEARCHES AND SEIZURES—WITHOUT A WARRANT—EVASIVE ACTION— PROBABLE CAUSE.

> *A search without a warrant in order to be reasonable must be based on more than an "evasive action" or a "furtive gesture"; a defendant's merely throwing a jacket over a clear plastic bottle and bag is insufficient to justify a search of defendants' vehicle without a warrant where the reason the officer had stopped the vehicle was for a traffic violation.*

Appeal from Van Buren, David Anderson, Jr., J. Submitted Division 3 March 7, 1972, at Grand Rapids. (Docket Nos. 11849, 11850, 11851.) Decided April 28, 1972.

Michael D. Hall, Terry R. Street, and James K. Leach were charged with unlawful possession of marijuana. Defendants' motion to suppress the evidence granted by an order that also quashed the informations. The people appeal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William C. Buhl,* Prosecuting Attorney, for the people.

Before: T. M. BURNS, P. J., and FITZGERALD and DANHOF, JJ.

FITZGERALD, J. Defendants were charged with unlawful possession of marijuana.* A motion to suppress evidence as to all the defendants was

---

* MCLA 335.153; MSA 18.1123.

filed on March 5, 1971; a hearing was held on March 8, 1971. Subsequently, the trial court entered an order suppressing the evidence and quashing the informations. The people's appeal from the quashal is here by leave of the Court. The facts leading to this appeal are as follows:

The three defendants were driving in a Chevrolet van westbound on I-94 near Paw Paw, Michigan, at 4 a.m. on the morning of May 23, 1970. State Police officers traveling in the opposite direction noticed that the van had only one headlight. The officers turned around, pursued, and stopped the van. While one of the police officers was talking to the driver, defendant Leach, reference was made to defendant Hall who was lying on a seat in the back of the van. The officer on the driver's side of the van asked his partner on the other side of the van to check the back seat. The officer shined a flashlight in the back seat, observed defendant Hall, and just momentarily saw a clear plastic bag and a clear plastic bottle. Almost simultaneous with that observation, defendant Leach either inadvertently or intentionally dropped or threw a jacket over the plastic bag and bottle. The police then ordered the three defendants out of the car, removed the jacket, and confiscated the plastic bag and bottle. Upon examination, the officers, for the first time, observed that the bag and bottle contained a substance which appeared to them from their previous law enforcement experience to be marijuana.

Defendants were then placed under arrest and were escorted to the police car. One of the officers then returned to the van and searched it, finding more marijuana in a Bufferin bottle and in a wooden box.

Defendants were charged with unlawful posses-

sion of marijuana. After preliminary examination on July 14, 1970, they were bound over to circuit court for trial. They were arraigned in the circuit court August 31, 1970. Thereafter, counsel for the three defendants moved to suppress the evidence on the ground that the search of the van and the seizure of the marijuana were unreasonable because not based upon probable cause.

The trial court subsequently granted the defendants' motion to suppress and quashed the informations against them.

The court relied upon *People v Reeves,* 23 Mich App 183 (1970), in finding that the seizure of the plastic bag and the plastic bottle was merely based on a general suspicion, and that, therefore, such seizure was unreasonable. The court reasoned that the arrests which followed this seizure were unlawful, and that the subsequent search and seizure of the wooden box and the Bufferin bottle would also be illegal. After the prosecuting attorney attempted to distinguish *Reeves,* the trial court stated his belief that there was no such "obvious evasionary tactic" that would take this case out of the holding of *Reeves.*

It was undisputed below that the police officers had lawfully stopped defendants' vehicle because the nonoperative headlight constituted a violation of the motor vehicle code. Further, it was undisputed below that the officer did not see the contents of the plastic bag and bottle when he momentarily observed them in the light of his flashlight. Hence, the question on appeal is narrowed to an inquiry as to whether the driver's furtive gesture of dropping or throwing a jacket over the containers afforded the officers probable cause to search the van.

The issue on appeal can be stated as:

*Did the trial court err in finding that the search
of the vehicle in which the defendants were travel-
ing and the seizure of evidence containing mari-
juana were unreasonable?*

The people contend that the trial court was in
error when it relied on *People v Reeves, supra,* in
granting the defendants' motion to suppress the
evidence. It is argued that the crucial distinction is
that the officers in *Reeves* at no time were ob-
served by the defendant when he made his actions
which were termed merely suspicious. To the con-
trary, in this case defendant Leach made a volun-
tary and deliberate motion to conceal the seized
objects while he was conscious that he was being
observed by a police officer. It is the people's
position that this case falls directly within the
scope of *People v Evans,* 3 Mich App 1 (1966), and
*People v Lewis,* 269 Mich 382 (1934).

The defendants have not filed a brief on appeal
in this cause.

The officers had no knowledge, perhaps only
suspicion, that the plastic bag and bottle might
contain marijuana. They had not, before the sei-
zure, observed anything in the containers. Hence,
it is fair to say that prior to the time that the
jacket was thrown or dropped on the containers,
the police had no probable cause to suspect that a
crime was being committed or to search the auto-
mobile.

A number of cases have considered the furtive
gestures or evasive actions of defendants while
under police observation as properly considered in
determining whether probable cause existed. The
principal cases are analyzed in *People v Evans,* 3
Mich App 1 (1966). After an examination of those
cases, *Evans* concluded (p 7):

"All of these cases seem to be based upon the theory that when a person, upon discovering that he is being observed by the police, takes obviously evasive action, he gives the police reasonable cause to believe that he is committing or has committed a felony or is in the process of committing a misdemeanor, thereby justifying immediate search and seizure."

See, also, *People v Charles Wilson,* 27 Mich App 171 (1970).

A series of California cases are particularly enlightening as to the basis of the "evasive action" or "furtive gesture" doctrine. In *People v Superior Court of Yolo County,* 3 Cal 3d 807; 91 Cal Rptr 729; 478 P2d 449 (1970), an officer, while chasing a speeding vehicle, observed a passenger bend down and then resume a normal sitting position as the driver pulled over. The driver exited the vehicle and approached the officer. The Court held that the officer lacked probable cause to search the vehicle, and the marijuana observed and seized after the officer opened the door on the passenger side of the vehicle was properly suppressed. The Court cited *Grundstrom v Beto,* 273 F Supp 912 (ND Tex, 1967), for the proposition that a search for contraband is reasonable when conducted incident to a traffic violation only when the arresting officer observes some occurrence other than the traffic offense itself which reasonably leads the officer to the belief that the motorist possesses contraband. The Court then went on to discuss the reasoning of those code cases in which probable cause to search a vehicle has been predicated on "furtive gestures" of an occupant of such a vehicle; the Court said, at pp 817–818:

*"The theory, of course, is that although the officer does not actually see any contraband from outside the vehicle, he may reasonably infer from the timing and*

*direction of the occupant's movements that the latter is
in fact in possession of contraband which he is endeav-
oring to hide.* From the viewpoint of the actor, the
theory rests on a sound psychological basis: 'It is a
natural impulse on confrontation to hide immediately
any contraband' *(People v Jiminez,* 143 Cal App 2d 671,
674; 300 P2d 68, 70 [1956]). We can posit that sudden
efforts at concealment, like flight from the scene of a
crime, may well be expressions of consciousness of guilt.
On the other hand, the same motion may in fact have
an entirely innocuous purpose: 'It is recognized that a
person's reasons for concealment may run the whole
spectrum from the most legitimate motives to the most
heinous' *(People v Weitzer,* 269 Cal App 2d 274, 292; 75
Cal Rptr 318, 330 [1969]).

   "'The difficulty is that from the viewpoint of the
*observer,* an innocent gesture can often be mistaken for
a guilty movement. He must not only perceive the
gesture accurately, he must also interpret it in accord-
ance with the actor's true intent. But if words are not
infrequently ambiguous, gestures are even more so.
Many are wholly nonspecific, and can be assigned a
meaning only in their context. Yet the observer may
view that context quite otherwise from the actor: not
only is his vantage point different, he may even have
approached the scene with a preconceived notion—con-
sciously or subconsciously—of what gestures he ex-
pected to see and what he expected them to mean. The
potential for misunderstanding in such a situation is
obvious.

   "'It is because of this danger that the law requires
more than a mere 'furtive gesture' to constitute proba-
ble cause to search or to arrest.* The United States
Supreme Court recently reaffirmed this rule in the case
of *Sibron v New York,* 392 US 40, 66–67; 88 S Ct 1889,
1904; 20 L Ed 2d 917, 937 (1968): 'deliberately furtive
actions and flight at the approach of strangers or law
officers are strong indicia of *mens rea,* and *when cou-
pled with specific knowledge on the part of the officer
relating the suspect to the evidence of crime,* they are
proper factors to be considered in the decision to make
an arrest.' (Italics added.) That knowledge, of course,
may be derived from the usual twin sources of informa-

tion and observation; stating the rule for California, the Court in *People v Tyler,* 193 Cal App 2d 728, 732; 14 Cal Rptr 610, 612 (1961), declared: *'As it is the information known to the police officers or the suspicious circumstances which turn an ordinary gesture into a furtive one, it is equally clear in this state that in the absence of information or other suspicious circumstances, a furtive gesture alone is not sufficient* \* \* \* *.'* (Accord, *People v One 1958 Chevrolet Impala,* 219 Cal App 2d 18, 20; 33 Cal Rptr 64 [1963])" (Footnote omitted; emphasis added.)

An even later California case comes quite close to approaching the fact situation of the case before this Court. In *People v Torralva,* 17 Cal App 3d 686; 94 Cal Rptr 900 (1971), the defendant had been convicted of possession of marijuana after he had been pulled over for not having license plates. The arresting officers saw a plastic box fall when the defendant pulled down the visor of his car. One of the officers noticed that the box contained a brown substance, but at that time he could not tell what it was. The defendant quickly grabbed the box and stuck it behind his back; he then tried to stick it in the back behind the driver's seat and said, "This is an illegal search. You can't do this." The box, which contained the marijuana, was then seized. The Court said (pp 691–692):

"In the present case the officers saw a plastic box fall when appellant pulled down the visor of the car. As he bent over he noticed it contained a brown substance but at that time he could not tell what it was. The officer testified 'He [appellant] quickly grabbed it [the box] stuck it behind his back, tried to stick it in the back behind the driver's seat and said, "this is an illegal search. You can't do this." ' \* \* \* The officer then seized the box, which contained the contraband.

"Here we do not have the case of an officer who speculates that the movement of an arm or looking over the shoulder is a guilty movement, made in an attempt

to conceal an object which the officer had never seen, but speculates exists. Then the officer further speculates that the object is contraband. Here the officer did not have to speculate as to the meaning of any of appellant's movements. *It was clear and apparent that appellant was attempting to seize the box and hide it from the officer to prevent him from learning the nature of the contents.* Furthermore, the officer did not have to speculate as to whether there was an object actually being hidden. He saw the object. The only thing the officer could not be sure of was the nature of the brown substance in the plastic box. * * * The contraband was obtained by a lawful search based upon reasonable cause." (Emphasis added.)

If the California rule is applied to this case, that is, that a mere furtive gesture is not sufficient to constitute probable cause to justify a search without a warrant, then the search in this case could be justified only if defendant's furtive gesture is considered along with the fact that police are familiar with the practice of carrying narcotics in plastic vials and bags, especially marijuana. While there is no testimony of the police which shows that they were familiar with that practice or that they acted in this case pursuant to a knowledge of the practice, the presence of the two containers and the furtive action of attempting to conceal them justify a reasonable belief on the part of a police officer that a crime was being committed.

The trial court erroneously based the suppression order on this Court's decision in *People v Reeves,* 23 Mich App 183 (1970). In that case, police observed the defendant running from a hotel in Detroit and entering a taxicab which was parked in front of the hotel. The police officers approached the cab and saw defendant remove an envelope from his stocking and throw it on the floor of the cab. The police opened the cab, re-

moved the envelope, and discovered that it contained heroin. This Court ruled that the search and seizure were unreasonable, principally because there was no probable cause for stopping the defendant initially. In addition, the Court said (p 188), "we are not directed to authority for the proposition that the mere observance by the officers of the defendant taking a packet out of his stocking and dropping it on the floor of the taxicab gives the officers probable cause to make an arrest".

The trial court found a parallel between the facts in this case and the facts in *Reeves* "startling", stating:

"I see no difference between dropping a jacket over a plastic bag and a plastic bottle and the removal of an envelope from a person's sock and throwing it on the floor of a taxicab. Each one certainly creates a general suspicion.

"But at this particular point the officer could not in any way testify that he had reasonable grounds to believe that anyone in this vehicle was in the possession of a narcotic drug. It would therefore follow that the seizure of the plastic bag and the plastic bottle on a general suspicion, but without any specific information which would justify it, would be an unreasonable search and seizure."

*Reeves* is distinguishable. The principal reason for the decision in that case was the utter lack of probable cause for the police to stop the taxicab in the first place. However, in this case it is conceded that the police lawfully stopped defendants and that they were in a position to observe what they did.

The second major distinction is that in *Reeves* there was no evidence to indicate that the defendant removed the envelope from his stocking and

threw it on the floor of the cab after he had seen the officers approaching and in order to conceal the envelope from them. On the other hand, there was evidence here to support the proposition that defendant Leach dropped or threw his jacket over the clear plastic bag and plastic bottle only after one of the officers had proceeded to shine his flashlight into the back of the van; consequently, there existed a strong inference that the defendant Leach was attempting to conceal those items from the view of the officer.

The rule in this state is that in order to justify a search and seizure without a warrant, an officer must act on some fact or circumstance or upon some such information as would create in his mind a reasonable and honest belief that the law was being violated. *People v Goss,* 246 Mich 524, 525–526 (1929).

The question for this Court to decide, then, is whether or not the officer in this case acted upon some such fact or circumstance. Another way of stating this question is whether or not under all the circumstances, the search and seizure in this case were reasonable. *People v Gonzales,* 356 Mich 247 (1959).

*Evans, supra,* and the cases cited in that opinion, indicate that the Michigan courts also require something more than a mere "evasive action" or "furtive gesture". In *People v Kuntze,* 371 Mich 419 (1963), the defendant failed to respond to the signals of a patrol car, the officers saw two of the defendants bend forward in what seemed to them to be an effort to stuff an object under the front seat, and blood spots and smears were noticed on the shoulders and backs of two of the passengers.

In *Lewis, supra,* the defendant reached into his pocket as if going for a gun; the exigency of the

occasion justified the officer's search which produced weapons in both instances. Finally, in *Evans*, itself, the arresting officers had seen the defendant proceeding at a rapid walk very late at night and subsequently found him crouched behind a trash receptacle in an obviously evasive action.

Was there more than a mere "evasive action" or "furtive gesture" in order to make the officer's search reasonable before this Court?

Although the officer had no reason to be suspicious of the contents of the plastic bottle and the plastic bag from the fleeting glance he got of those objects before the jacket fell on top of them, the fact that he did notice those objects was sufficient to give him probable cause to believe that defendant Leach was attempting to hide the contents from him.

The decision of the trial court in finding that the officer's search was unreasonable and granting the defendants' motion to suppress the evidence was reversible error.

Reversed and remanded.

Danhof, J., concurred.

T. M. Burns, P. J. *(dissenting)*. I am in accord with the "California Rule" that there must be more than an "evasive action" or "furtive gesture" in order to make reasonable a search by the police. Merely throwing a jacket over a clear plastic bag and bottle is, in my opinion, insufficient to justify a search of defendants' vehicle.

In Michigan we must determine whether, under all of the circumstances, the search was reasonable. To be held reasonable, it is my opinion that the police must observe something more than a "furtive gesture".

In the instant case the officer saw one of the defendants drop a jacket over a clear plastic bag and a clear plastic bottle. I cannot see how that action alone could justify a search of defendants' vehicle.

Had defendants been acting suspiciously or had they been stopped for something other than a traffic violation, then the action of covering the articles with a jacket, when coupled with the surrounding circumstances, might justify the officer's search. Here, however, there is nothing to make the officer suspicious except the action of dropping a jacket over the containers. The subsequent search was, therefore, unreasonable.

I vote to affirm the decision of the trial court.