**STATE of Minnesota, Respondent,**

v.

**Robert Brian GALLAGHER, Appellant.**

**No. 47208.**

Supreme Court of Minnesota.

Jan. 26, 1979.

Rehearing Denied March 15, 1979.

---

Connolly & Heffernan and Thomas J. Barrett, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Craig Forsman, Sp. Asst. Atty. Gen., St. Paul, Douglas L. Ruth, County Atty., Owatonna, for respondent.

Heard before KELLY, TODD and IRVINE, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant Robert Brian Gallagher was convicted in a court trial of possession of a controlled substance in violation of Minn.St. 152.01, 152.02, 152.09, and 152.15, and was sentenced to a term not to exceed 3 years imprisonment. On appeal Gallagher contends that the district court erred in overruling his motion to suppress evidence and that his sentence was imposed in violation of the due process clause of the Fourteenth Amendment. We affirm.

On February 19, 1976, at approximately 7:40 p. m., while patrolling Interstate Highway 35 just south of Owatonna, Minnesota, Patrolman Glen Gramse of the Minnesota Highway Patrol clocked defendant's vehicle traveling at an excessive rate of speed. Officer Gramse approached defendant and, after informing defendant that he was stopped for speeding, asked for and received the defendant's driver's license. The officer testified that at that time he noticed that defendant's eyes "were in a wide stare, they were watery."

Officer Gramse then approached the left front door of defendant's vehicle and noticed, upon shining his flashlight into the car, a young woman passenger seated in the right front seat. He also noticed a brown paper bag lying on the floor between the passenger's legs and the front seat and that the passenger's knees and legs were turned toward him. In response to the officer's question defendant stated that he was going to Mexico on vacation. When asked whether his passenger was a runaway defendant answered that she was not. Officer Gramse then walked around the front of defendant's car and tapped on the window of the right front door. After the passenger rolled down the window, the officer asked for, and received, identification from

the passenger showing her to be 19 years of age. Officer Gramse noticed that the passenger had turned to the right of the car to face him there and that the brown paper bag was "still between her legs in the front seat of the car." While the officer did not observe the passenger's movements as such, he did notice that she was in a different position than when he first noticed her. Because of her actions, Officer Gramse got the impression that she did not want him to see what was in the paper bag.

The officer then asked the passenger to step out of the car. Officer Gramse testified that she "opened the door just enough to get out, and she slid around the door and directly in front of the window, very awkwardly, to stand between myself and the right front door." At that time the officer noticed that the passenger's eyes also stared very widely. Officer Gramse then asked the passenger where she was going. She first responded that she didn't know, then qualified that statement by saying south. Defendant repeated that they were going to Mexico; then the passenger said they were going to Mexico.

Officer Gramse next asked what was in the paper bag, to which defendant replied that it contained lunch and some items to eat. Defendant then refused the officer's request to look in the bag, whereupon Officer Gramse informed defendant that he was under arrest and that he could search the vehicle. At this time the only offense committed by defendant of which the officer was aware was speeding. He had no knowledge as to what the bag contained. Officer Gramse then asked the passenger to hand him the paper bag, which she did. He opened the bag and found four plastic bags containing what he believed to be marijuana.

After observing the contents of the paper bag, Officer Gramse informed both defendant and his passenger of their *Miranda* rights, and both parties subsequently were taken to the Law Enforcement Center in Owatonna. Anne Rummell of the Minnesota Bureau of Criminal Apprehension later analyzed the substance found by Officer Gramse and found it to be marijuana.

At an omnibus hearing held April 9, 1976, defendant moved to suppress evidence of the paper bag and its contents on the ground that such evidence was obtained as a result of an unlawful search and seizure. The trial court, finding the search and seizure based on probable cause, denied the motion. Thereafter, following a trial to the court, defendant was found guilty of illegal possession of marijuana and sentenced to a term not to exceed 3 years. On appeal defendant challenges the ruling of the district court denying his suppression motion and also argues that the imposition of his sentence without the presence of counsel was a violation of due process.

■ Defendant argues that the police officer did not have probable cause to conduct a warrantless search of his automobile and therefore the trial court erred in denying his motion to suppress evidence which was the fruit of that search. Probable cause to search an automobile exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a reasonable man of reasonable caution in the belief that the automobile contains articles the officer is entitled to seize. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Harris,* 265 Minn. 260, 121 N.W.2d 327 (1963). The issue here is whether Officer Gramse, conditioned by his observations and information, and guided by his 12 years experience with the State Highway Patrol, could reasonably have believed that defendant's automobile contained contraband. *State v. Harris, supra.*

The trial court, applying the above test to the following facts, concluded that the officer had probable cause to search:

(1) The defendant's immediate exit from his car and approach of the patrol car after being stopped by the officer;

(2) The passenger's awkward movements, which the officer interpreted as attempts to shield the paper bag from his view;

(3) The passenger's failure to state where they were going until after she heard defendant state their destination; and

(4) The glassy stares of both defendant and his passenger.

Perhaps anticipating defendant's argument on appeal, the trial court supported its finding of probable cause by quoting the following language:

"[A] number of circumstances [can] combine to create a strong suspicion, each of which, if operating alone, would justify no more than a mild suspicion." *People v. One 1955 Ford Victoria,* 193 Cal. App.2d 213, 215, 13 Cal.Rptr. 910, 911 (1961), quoted with approval in *State v. Harris, supra.*

Defendant on appeal argues that each of these facts, taken separately or taken together, admit to widely varying interpretations, none of which gives rise to probable cause. Defendant principally relies on *People v. Superior Court of Yolo County [Yolo],* 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449 (1970), the seminal case concerning "suspicious" or "furtive" gestures. There a police officer, after observing an automobile traveling at a high rate of speed, signaled its driver to stop. As the driver began to pull over to the side of the road the officer saw a woman's head rise from the passenger side of the front seat. The officer watched as she turned and put her arm over the back of the seat, then faced forward again, bent down toward the floor, and reassumed a normal sitting position. After obtaining the license of the driver, who had walked back to meet him, the officer approached the passenger side of the vehicle and immediately opened the car door and looked inside. Upon opening the door the officer saw what he believed to be marijuana seeds in the crack of the seat cushions. On appeal the state argued that the passenger's "furtive gesture" toward the seat or floor of the automobile and the driver's walking back to the officer rather than waiting for the officer to approach gave the officer probable cause to search. The California Supreme Court in an exhaustive opinion rejected the state's contention on the grounds, inter alia, that such actions are open to a wide variety of interpretations and inferences. The California Supreme

Court indicated, that while a furtive gesture by itself does not constitute probable cause, a furtive gesture coupled with information known to the police officer or observation of other suspicious circumstances may "be sufficient to establish probable cause." 3 Cal.3d at 818, 91 Cal.Rptr. at 735, 478 P.2d at 456.

Writing of those cases in which probable cause to search has been predicated on furtive gestures, the California court opined the following:

"* * * The theory, of course, is that although the officer does not actually *see* any contraband from outside the vehicle, he may reasonably *infer* from the timing and direction of the occupant's movements that the latter is in fact in possession of contraband which he is endeavoring to hide. From the viewpoint of the actor, the theory rests on a sound psychological basis: 'It is a natural impulse on confrontation to hide immediately any contraband.' (Citation omitted.) We can posit that sudden efforts at concealment, like flight from the scene of a crime, may well be expressions of consciousness of guilt. On the other hand, the same motion may in fact have an entirely innocuous purpose: 'It is recognized that a person's reasons for concealment may run the whole spectrum from the most legitimate motives to the most heinous.' (Citation omitted.)

"The difficulty is that from the viewpoint of the *observer,* an innocent gesture can often be mistaken for a guilty movement. He must not only perceive the gesture accurately, he must also interpret it in accordance with the actor's true intent. But if words are not infrequently ambiguous, gestures are even more so. Many are wholly nonspecific, and can be assigned a meaning only in their context. Yet the observer may view that context quite otherwise from the actor: not only is his vantage point different, he may even have approached the scene with a preconceived notion—consciously or subconsciously—of what gestures he expected to see and what he expected them to mean. The potential for misunderstanding in such a situation is obvious." 91 Cal.Rptr. at 734–735, 478 P.2d at 454–55.

The United States Supreme Court expressed similar sentiments in *Sibron v. New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936 (1968):

"[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."

See *People v. Hall,* 40 Mich.App. 329, 198 N.W.2d 762 (1972); see generally Annotation, 45 A.L.R.3d 581. Two of the facts stressed by the trial court in the instant case appropriately can be labeled "furtive gestures."

■ The first is the defendant's immediate exit from his car. In *State v. Shevchuk,* 291 Minn. 365, 191 N.W.2d 557 (1971), we characterized the act of both the driver and his passenger leaving their car and approaching the arresting officer as "an unusual maneuver." Defendant attempts to characterize his action as so ambiguous as not to constitute a suspicious circumstance. It may be true that a driver gets out of a car for wholly innocent motives; e. g., a desire to appear cooperative with the officer making the stop. But a police officer cannot for that reason alone discount completely the presence of a guilty motive prompting the same action, e. g., a desire to decoy the officer so that he will not have an opportunity to look into the car. To be sure, such conduct by itself could not serve as a constitutional predicate for an exploratory search of the automobile. But it seems unreasonable under the same circumstances to prohibit a police officer from making even a cursory look at the inside of an automobile. *State v. Shevchuk, supra.*

■ The second fact that can be labeled a furtive gesture is the passenger's awkward movements. The movements testified to by the officer were, (1) the passenger's knees and legs were pointed toward him both when he was on the left side and right

side of the car, although he did not see the passenger's movements in the auto as such, and (2) the passenger's exit from defendant's automobile at the officer's request. Like defendant's exit from his car, the passenger's movements may have been innocently motivated. *Compare People v. Goessl,* 186 Colo. 208, 526 P.2d 664 (1974) *with People v. Hall, supra.* Unlike the facts in *Yolo,* where the officer was unable to observe the object of the alleged furtive gesture, Officer Gramse was able to observe both the brown paper bag which was in plain view as well as the passenger's movements in relation to it. See *United States v. Jones,* 452 F.2d 884 (8 Cir. 1971). While we might agree that such conduct by itself, even if taken together with defendant's conduct, would not support a finding of probable cause, it is not unreasonable on this record to attach a guilty motive to the passenger's conduct, especially in light of other observations made by the officer at the scene. Because of those observations, we think such conduct was properly included in the probable cause determination.

◼ Officer Gramse testified that he observed both defendant's and his passenger's eyes as being in a wide stare. Based on this testimony, the trial court found that both defendants' eyes exhibited glassy stares. This coupled with the officer's prior experience indicated possible use of a controlled substance.[1] Defendant argues that the above finding is totally without evidentiary support in that there is no testimony that the officer suspected the use of a controlled substance. It is true that the officer's testimony on this point was not explicit. We do not agree, however, that the trial court's finding is without support. Officer Gramse testified that he had 12 years of highway patrol experience, that he had attended several drug seminars designed to acquaint officers with the use, appearance, and effects of drugs, and that he had previously effected arrests for use of controlled substances. On this record we think the trial court could find that Officer Gramse's testimony concerning his observations of both defendant's and the passenger's eyes indicated the possible use of a controlled substance.

◼ Viewing the totality of the circumstances facing Officer Gramse at the time of the search, we think the seizure and search of the brown paper bag was supported by probable cause. The officer observed defendant's exit from his car and the passenger's furtive gestures attempting to shield Officer Gramse's view of the paper bag. Faced with this conduct, coupled with his observations of defendant's and his passenger's "widely-staring" eyes, Officer Gramse was reasonable in concluding that the paper bag contained contraband. The search was not unlawful.

◼ Defendant also argues that the trial court's imposition of sentence in the absence of counsel violated the due process clause of the Fourteenth Amendment. See, *Mempha v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). However, because defendant does not advance any claims of prejudice and because we were orally informed that defendant for personal reasons chose to appear without an attorney we need not address that issue. See, *McClain v. Swenson,* 435 F.2d 327 (8 Cir. 1970).

Affirmed.

WAHL, Justice (dissenting).

I respectfully dissent. More than hunches, even though made in good faith, must underlie a determination to intrude upon constitutionally guaranteed rights of the private citizen, even when the citizen is in an automobile. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (1975). The pattern of facts and circumstances which the trial court in the instant case found constituted probable cause does not appear from the officer's testimony likely to have moved him at the time of the incident to more

---

1. Defendant argues that the officer's testimony does not support the trial court's finding of "glassy stares." The difference in description seems to be a difference in semantics. Defendant's trial attorney, while cross-examining Officer Gramse, characterized the passenger as being "glassy-eyed."

than mere suspicion. There was no testimony that the officer suspected illegal drug use by defendant or his passenger or that the brown paper bag was believed to contain drugs. Furthermore, this is not a case where contraband or weapons were in plain sight within an automobile stopped for a traffic offense.[1] Here, the officer's attention was directed towards an ordinary brown paper shopping bag, certainly not contraband by appearance. The officer's testimony indicates that he felt the passenger did not want him to look into the bag. However, until the officer actually searched the bag, he had no more than a suspicion that the bag contained contraband. I find this suspicion, aroused by "furtive" gestures, insufficient to support a search of the parties' personal property.

To avoid unwarranted intrusions where certain furtive movements by automobile occupants indicate to an officer that criminal activity might be present, the rule in *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), should be strictly followed. *Sibron* requires that deliberately furtive actions, if indeed they are furtive, are proper factors when coupled with specific knowledge of the officer relating the suspect to the evidence of crime. 392 U.S. 66, 88 S.Ct. 1904, 20 L.Ed.2d 936. Here, furtive motions without more specific knowledge of a crime constituted insufficient cause to search defendant's automobile. Accordingly, the seized evidence should have been suppressed.

I would reverse.

---

1. See, e. g., *State v. Shevchuk,* 291 Minn. 365, 191 N.W.2d 557 (1971).