Edward William McDANIEL,
Appellant (Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5474.

Supreme Court of Wyoming.

Aug. 17, 1981.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Aid Program, Laramie, and Sylvia Lee Hackl, Asst. Public Defender, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, and Allen C. Johnson, Sr. Asst. Atty. Gen., for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

Appellant-defendant was convicted following a jury trial in district court of second degree murder in violation of § 6–4–104, W.S.1977.[1] The issues on this appeal are:

1. Whether the trial court, by admitting into evidence a color photograph referred to as a mug shot, depicting the appellant in a green shirt with a height scale in the background, created prejudice to the appellant to constitute reversible error.

2. Whether the trial court erred in permitting one of the State's witnesses to testify as an expert in the field of bullet comparisons where the witness acquired his knowledge through study, training and experience, but was not formally educated and held no recognized degree in the subject.

We will affirm.

---

1. Section 6–4–104, W.S.1977:
   "Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life."

On May 30, 1980, the remains of a human body were found on ranchland approximately fourteen miles west of Cheyenne on Happy Jack Road. Edward Francis, who discovered the body in an irrigation ditch, contacted the Laramie County Sheriff's Office. An autopsy performed on the same day located a .32 caliber bullet in the right groin of the deceased. It was determined that this was the cause of death. Through investigation, the deceased was identified as David H. Tunno.

Further investigation produced the following. Located in the files of the Laramie County Sheriff's Office was a report, dated May 20, 1978, in which a Sandra K. Farmer related that Edward William McDaniel (appellant) had told her, on the evening before, that he had killed David Tunno with an automatic pistol and hidden the body west of Cheyenne on Happy Jack Road. Appellant explained to Farmer that Tunno had made a homosexual advance and that was the reason for the killing.

The appellant owned a .32 caliber automatic pistol and, in November, 1977, had fired several shots into the home of Donald McDaniel, the defendant's brother. The bullets had never been removed. They were retrieved by the Laramie County Sheriff's Office and submitted to a crime laboratory for comparison purposes. The markings on the bullets from the home of appellant's brother matched the markings found on the bullet removed from Tunno, establishing that they had been fired from the same gun.

On June 26, 1980, appellant was arrested for the murder of Tunno. Appellant entered a plea of not guilty and a jury trial ensued on October 27, 1980.

During the trial, a deputy sheriff testified as to an interview he had recorded with a Tina Coady. Since she was not available to testify, by stipulation a transcript of the interview was read to the jury as part of the evidence to establish appellant's identity and, over objections by appellant's attorney, three photographs of appellant shown to Coady were also shown to the jury. One photograph depicted appellant in a green shirt with a height scale in the background. Appellant's objection to the photograph, referred to as a "mug shot," was that the jury could speculate that appellant had a prior arrest history, and thus question appellant's character. Appellant claimed the photograph was prejudicial to his case. Although appellant moved for a mistrial based on the introduction of the photograph, the motion was denied.

During the trial, appellant also objected to the qualifications of Robert Christensen of the State Crime Laboratory as an expert in the field of ballistics. Appellant contended that Christensen lacked training and experience to qualify as an expert witness and further that he did not have adequate materials to work with. Appellant's objections were overruled by the trial judge.

Appellant testified as to the events of May 18, 1978. He and Tunno had been drinking alcoholic beverages during the evening. Appellant borrowed a truck and the two started driving around. Appellant stopped the truck for the purpose of urinating. While doing so, Tunno made a homosexual advance on him and, upon appellant's resistance, Tunno ran off. Appellant fired two shots in the direction of Tunno, returned to the truck, attempted to find Tunno and, unable to do so, drove home.

I

Did the trial court, by admitting into evidence a color photograph, create prejudice to the appellant to constitute reversible error? We hold that the photograph was properly admitted and should not be considered a "mug shot" so prejudicial to the appellant as to constitute reversible error.

■ Appellant's objection was to the format of the picture, claiming it was prejudicial in that the jury would speculate that the appellant had a prior criminal record. The picture showed the appellant as he appeared at the approximate time of the offense. He was wearing a green shirt, plain with no police serial numbers or other markings across the picture. It could not "typically" have been considered "jail garb"

or exposed the appellant's prior criminal record in that clothing worn by inmates varies from state to state as to the color and style of shirt. The photograph was a front view of appellant's face and shoulders, no profile photograph was attached and no testimony was elicited as to where the photograph was taken. In *State v. Jackson*, 24 Ariz.App. 7, 535 P.2d 35 (1975), a photograph of defendant admitted into evidence was not considered a "mug shot," so as to raise an inference in the minds of the jurors that defendant had been previously arrested, because the photograph was a straight-on view of defendant's face and shoulders and not a profile shot, plus no numbers were visible below the picture and no testimony was elicited as to when the picture was taken.

The purpose of the photograph was to properly identify which individual Coady was referring to in her statement, as she did not personally appear at the trial to identify appellant. In *State v. Fowler*, 29 N.C.App. 529, 225 S.E.2d 110 (1976), where a police officer had shown a witness photographs at the trial, "Officer Kelly's testimony that he showed the photographs to Miss Boyd, and that she selected defendant's photograph, was allowed solely to corroborate the testimony of Miss Boyd." We have the same situation in this case. Even height scales are not common in police photographs with a front view of the defendant. All objectionable features, such as police numbers and department names are not present; to the reasonable person it is just a photograph presented to support the testimony. Admission of evidence is within the sound discretion of the trial court, and absent a clear abuse of discretion will not be disturbed. *Daellenbach v. State*, Wyo., 562 P.2d 679, 682 (1977). The probative value in properly identifying the individual referred to by Coady outweighed any prejudicial effect to be considered, and we find no abuse of discretion on this issue by the trial court.

## II

Did the trial court err in permitting the State's witness to testify as an expert in the field of ballistics? We hold that the trial court properly considered the knowledge, experience and training of Christensen prior to qualifying him as an expert, and we will not disturb the sound discretion of the trial judge.[2]

In a hearing outside the presence of the jury, the trial judge was very careful to question the detail and depth of the explanation Christensen would present to the jury regarding bullet comparisons. Christensen would explain the bullet found in the body of Tunno and some of the bullets removed from Donald McDaniel's house were of the same caliber and were marked so as to be identified as having been fired from the same gun.

Although Christensen had no formal degree in ballistics, he did testify on direct examination that he trained under a Dr. James Booker, the director of the crime laboratory and the firearms examiner at the Wyoming State Crime Laboratory. Further, he studied books on the subject of firearms identification and had done hundreds of comparisons for class characteristics on projectiles. Christensen has testified on seventeen occasions in courts of Wyoming as a firearm's examiner.

*People v. King*, 58 Mich.App. 390, 228 N.W.2d 391 (1975) quoted the following approvingly:

> "One does not have to have formal education to be an expert, but may have acquired special knowledge concerning a subject by reason of his employment." *People v. Wilson*, 27 Mich.App. 171, 183 N.W.2d 368 (1970).

Through employment, Christensen demonstrated his expertise in the field of firearms and ballistics. He had been trained by an expert to make bullet comparisons. He had special knowledge that could assist the jury, and the trial judge found him competent to

2. "* * * the district court's determination of whether an expert's qualifications are established will not be disturbed except in extreme cases or when a clear abuse of discretion is shown * * *." *Chavez v. State*, Wyo., 604 P.2d 1341, 1349 (1979).

do so. Rule 702, W.R.E.[3] This information, too, was before the jury and it has been adequately stated in *State v. Macumber*, 112 Ariz. 569, 544 P.2d 1084 (1976):

"An expert is one whose opinions depend upon special knowledge with which he can assist the jury. [Citation.] He need not be a professional, but may be a lay person who has special knowledge superior to men in general through actual experience or careful study. [Citation.] He need not have the highest degree of skill or knowledge, but that lack of degree goes to the weight of his testimony before the trier of fact and not to admissibility. [Citations.]

\*　　\*　　\*　　\*　　\*　　\*

"A person need not be expert in a detailed aspect of a specialized area of knowledge; it is sufficient if he can be qualified as expert in that specialty.
\* \* \*"

Therefore whether or not Christensen qualified as an expert in the detailed area of ballistics, he displayed an adequate knowledge of firearms and could form an opinion of the ejector markings in which the jury could weigh the strength of his testimony. Plus, an expert witness is not limited to direct examination but exposes himself to cross-examination to thoroughly test his expertise. The trial judge properly allowed the testimony of Christensen to assist the jury as a trier of fact in issue.

Affirmed.

**3.** Rule 702, W.R.E.:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."