## PEOPLE v. EVANS.

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—PRIOR VALID ARREST—PROBABLE CAUSE.

   The validity of search and seizure without a warrant is not dependent upon a prior valid arrest, the test being whether or not under all the circumstances the search and seizure is reasonable.

2. SAME—OBSERVATION BY POLICE—EVASIVE ACTION.

   A person who discovers that he is being observed by the police and takes obviously evasive action, gives the police reasonable cause to believe that he is committing or has committed a felony or is in the process of committing a misdemeanor, thereby justifying immediate search and seizure.

3. SAME—OBSERVATION BY POLICE—EVASIVE ACTION.

   Search of defendant and seizure of 8 bottles of intoxicating liquor by police without a warrant *held*, reasonable, where officers while patrolling in their squad car at 4:45 a.m. observed him carrying a package while moving at a rapid walk, noted he disappeared, and shortly thereafter discovered him in an alley crouched behind a trash receptacle, or garbage can.

4. LARCENY—IDENTIFICATION OF PROPERTY—EVIDENCE.

   Identification of bottles of liquor, found on defendant when searched by police officers, as being the property of a club from which they were alleged to have been taken, *held*, suffi-

---

* Continued from Volume 2 Mich App.

### REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 47 Am Jur, Search and Seizure § 19.
[2] 5 Am Jur 2d, Arrest § 45.
[4] 32 Am Jur, Larceny §§ 128, 138.
[5] 5 Am Jur 2d, Appeal and Error §§ 545, 549.

(1)

ciently established by testimony of manager of the club describing the bottles equipped with pouring spouts and serial numbers of State stamps, to permit admission in evidence in prosecution for larceny in a building (CL 1948, § 750.360).

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—LARCENY IN A BUILDING—CLUB.

Claim that defendant could not be prosecuted for larceny in a building under statute making it a felony to steal "in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room, or any building used by the public" because premises in which the bottles of liquor were stolen, was a club and not a building used by the public, is not discussed where the issue was not raised before the trial court and is, therefore, not properly before the Court of Appeals (CL 1948, § 750.360).

Appeal from Recorder's Court of Detroit; Schemanske (Frank G.), J. Submitted Division 1 November 3, 1965, at Lansing. (Docket No. 107.) Decided April 26, 1966.

Virgil Lee Evans was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Samuel E. Olsen*, Prosecuting Attorney, *Samuel J. Torina*, Chief Appellate Lawyer, and *James E. Lacey*, Assistant Prosecuting Attorney, for the people.

*Bernard Adams, Jr.*, for defendant.

McGREGOR, P. J. Early in the morning of April 9, 1963, at about 4:45 a. m., two Detroit police officers on patrol duty in a squad car, were driving south on Rivard street, at Kirby, when they noticed a figure moving at a rapid walk and carrying a package go east to Russell street and then turn south and go out

of sight. The officers then turned the scout car around and went to the intersection of Russell and Kirby but could see no one. The officers then entered an alley near the intersection, which ran west from Russell street. In the alley, they discovered the defendant crouched behind a trash receptacle, or garbage can, and holding a package in his hand. The officers instructed him to set the package down and raise his hands over his head and then they searched him. The package was a paper bag, containing three partially filled bottles (fifths) of liquor, two bottles of whiskey, and one of gin, each with a metal pouring spout. His pockets contained a full bottle (fifth) of vodka, one partially filled "fifth" bottle of whiskey with a metal pouring spout, and also approximately 18 nickels. When asked where he had obtained the whiskey, the defendant told them he had purchased it from a dark-looking fellow for $6.30 and that he had paid the man in nickels. The officers then placed the defendant in the squad car and made a quick examination of the business places selling liquor in that vicinity. They were not able to locate any building which appeared to have been broken into. Also, at that time, they had not received any complaints or information indicating that any places in that vicinity had been broken into or burglarized. The officers took the defendant to the police station, where he was held for investigation. Two days later, on April 11, 1963, he was charged with breaking and entering a business place in the night-time, with intent to commit larceny, and also with larceny in a building. Since the defendant's first trial ended in a hung jury, the breaking and entering count was dismissed. The defendant was then tried and found guilty of larceny in a building in the recorder's court and given a sentence of 10 months to 4 years.

The defendant's timely motion to suppress and exclude from evidence the liquor and coins found on defendant was denied. Defendant contends on appeal that the admission of this evidence was error because it was the fruit of an unreasonable search and seizure. His counsel argues that the arresting officers had no grounds for reasonable belief that the defendant had committed a felony because, at the time of the arrest, the officers did not know and could not have known that the appellant had stolen property. The difficulty of the critical question of the propriety of search and seizure which the facts of this case raise required an intensive study of the relevant cases. Research has revealed four decisive cases.

This Court makes no decision as to the existence of reasonable grounds for arrest of the defendant before he was searched. In Michigan, the validity of search and seizure without a warrant is not dependent upon a prior valid arrest. *People* v. *Kuntze* (1963), 371 Mich 419. The test is whether or not under all the circumstances, the search and seizure is reasonable. *People* v. *Gonzales* (1959), 356 Mich 247. Such determination can most easily be made by comparing the instant case with other cases most similar on their facts.

The most recent case is *In re Winkle* (1964), 372 Mich 292, which upheld the search of an automobile and the seizure of burglary tools contained therein by State police officers, who stopped the car for a traffic violation at 2 a. m. The search was made after the officers were informed that the car was not registered in the name of either occupant, the occupants were from Indiana, the driver displayed a Florida driver's license, and they were told radically conflicting stories by each of the two occupants as to their residence, destination, the purpose of their

trip, and the length of their intended stay. The
Court held that all these circumstances justified the
search.

In *People* v. *Kuntze, supra,* the court held a search
and seizure under somewhat different circumstances
to be reasonable. In that case, State police troopers
had been notified that occupants of a car were
"shining" deer in a field and that a shot had been
heard. As the troopers approached the vicinity in
which the shot had been heard, they saw the defend-
ant's car turn off into a side road and then go to
a nearby farmyard, where the officers knew they had
no right to be, and where the headlights on the de-
fendant's car were extinguished. A few hundred
feet beyond the side road, on to which the defendants
had turned, the officers came upon another car,
stopped alongside the highway. The occupants of
this car informed the officers that their car was not
operating properly and, upon the officers' request,
they voluntarily opened the car's trunk. Finding
nothing, the officers returned to their patrol car.
They then noticed the headlights of defendant's car
had been turned on again and that defendant's ve-
hicle was returning to the highway. As defendant's
car drove by, the officers noticed it did not have a
light illuminating its license plate. They then pulled
up alongside the left side of defendant's car and
signalled defendants to stop, by turning on the pa-
trol car's oscillating roof light and spotlight, and by
sounding its horn. When defendants failed to re-
spond to their signals, the troopers swung in behind
the defendant's car and flashed their spotlight into
the rear window of defendant's car as a signal to
stop. The spotlight revealed to the officers two of
the defendants bending forward and moving their
shoulders and arms in what seemed to them to be
an effort to stuff an object under the front seat on

which all the occupants were sitting. The defend-
ant's car then stopped and the patrol car stopped
behind it. As the troopers approached the car, one
of them noticed what appeared to be blood spots and
smears on the shoulders and backs of the white sweat
shirts of the two passengers in defendant's car. He
thereupon ordered them out of the car. As they got
out, the other trooper observed in the beam of his
flashlight a leg of a deer protruding from under the
front seat. He then ordered the driver out of the
car and extracted the hind quarter of a deer. The
court held that the blood-spattered appearance of
two of the defendants, the defendants' brief detour
into the farmyard, their delay in responding to the
police officers' signal to stop their car, and the fur-
tive actions of the blood-spattered defendants during
the chase together constituted probable cause to be-
lieve that the defendants had committed a felony
or were in the process of committing a felony.

The facts in *People* v. *Lewis* (1934), 269 Mich 382,
bear a closer similarity to the facts of the instant
case. After dark, one evening, Detroit police officers
saw a car not properly displaying a rear light pass
their cruiser at a high rate of speed. They overtook
the car within a distance of two blocks and stopped
it at the curb. It was occupied by the defendant and
another man who was driving. When they halted
the car, the officers saw the defendant fumbling in
his coat pocket with his right hand. The officers
thereupon placed the defendant under arrest and
searched him, and a 380 Colt automatic pistol was
found in his pocket. The court unanimously held
the search in that case to be reasonable, under all
these circumstances.

*People* v. *Licavoli* (1928), 245 Mich 202, is quite
similar in its facts to the *Lewis Case*. The arresting
officers had found the defendant sitting in a parked

car one afternoon and drove up alongside the car because they had been looking for the defendant to question him. As the police drove up, the defendant started squirming around as if he were going for something in his pocket. The officers jumped out of their cruiser and walked over to the side of the car in which the defendant was sitting because they thought the defendant was going to get a gun. One of the officers drew his gun, took the defendant out of the car, and arrested him. An immediate search revealed a .45 caliber pistol which the defendant had stuck down the back of his trousers. Under those circumstances, the Supreme Court sustained the trial court's denial of defendant's motion to suppress the evidence.

All of these cases seem to be based upon the theory that when a person, upon discovering that he is being observed by the police, takes obviously evasive action, he gives the police reasonable cause to believe that he is committing or has committed a felony or is in the process of committing a misdemeanor, thereby justifying immediate search and seizure. This Court concludes, therefore, that the defendant Evans, by evading and hiding from the police, gave them sufficient reason to make immediate search and seizure.

The defendant also contends that the bottles of liquor identified by one of the arresting officers as those taken from the defendant should not have been admitted into evidence for lack of identification as being the property of the Yugoslav Club, from which they were alleged to have been taken. Raymond Robbins, the manager of the Yugoslav Club, located at the northeast corner of Riopelle and Kirby, in Detroit, testified that several bottles of liquor were missing from the club's bar on the day of the defendant's arrest and that a window of the club had

·been broken and removed. He testified that the bottles found on defendant had metal pouring spouts and prices marked identical to the bottles taken from the club. He also testified that he purchased six bottles of the same brand of gin on March 1, 1963, less than a month and a half prior to the defendant's arrest. He brought with him to trial one of the bottles remaining from that order. The serial number on the State stamp on the bottle read 70791561. The serial number on the State stamp on the bottle taken from defendant read 70791566. After the proximity of the serial numbers was demonstrated, Robbins testified further that he knew from his own personal knowledge that the bottles were numbered in sequence by a conveyor system. Mr. Robbins also testified that he recognized one of the bottles of whiskey taken from the defendant because of a stain on the label. The trial judge properly admitted these exhibits into evidence with the appropriate comment that their probative force was for the jury to determine.

The defendant contends, lastly, that he cannot be convicted of larceny in a building in violation of CL 1948, § 750.360 (Stat Ann 1954 Rev § 28.592), which reads as follows:

"Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony."

because the Yugoslav Club is not a building used by the public. A careful search of the record below fails to reveal that this issue was at any time raised before the trial court. Since this question is not

properly before this Court on appeal, it will not be considered.

The judgment of the recorder's court is affirmed.

FITZGERALD and T. G. KAVANAGH, JJ., concurred.