PEOPLE v NELSON PITTS

1. CRIMINAL LAW—APPEAL AND ERROR—FAIR TRIAL.

An appellate court will consider an issue not raised at trial nor raised on appeal where necessary to preserve a criminal defendant's constitutional right to a fair trial.

2. CRIMINAL LAW—APPEAL AND ERROR—FAIR TRIAL—NEW TRIAL.

An appellate court should grant a criminal defendant a new trial on an issue not raised at trial nor raised on appeal where the issue was of such serious importance that, had it been raised at trial, the defendant might not have been convicted.

3. CRIMINAL LAW—APPEAL AND ERROR—FAIR TRIAL—PRESERVING QUESTION—NEW TRIAL.

The admissibility of evidence admitted at a criminal trial must be examined by the appellate court, even though the question of its admissibility was not preserved for appeal, to see if it was erroneously admitted and if its exclusion would probably have meant acquittal for the defendant where the admission of the evidence poses a serious question of a violation of the defendant's constitutional right against unreasonable searches and seizures.

4. SEARCHES AND SEIZURES—CONSENT—SEARCH OF AN AUTOMOBILE.

A valid consent to search an automobile stopped for failure to have a license plate light has not been shown where the evidence adduced at trial shows only that the defendant merely acquiesced in the police officer's request to search the automobile.

5. SEARCHES AND SEIZURES—CONSENT.

To constitute a voluntary consent to a search without a warrant, the record should indicate that the accused was advised of his rights, informed that he need not submit to the search, and that the fruits of the search could be used against him.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3] 5 Am Jur 2d, Appeal and Error §§ 549, 723.
[4–11] 47 Am Jur, Searches and Seizures §§ 15, 18, 19, 52.

6. Searches and Seizures—Search of An Automobile—Traffic Violation.

   The fact that the police had a right to stop an automobile for failure to have a license plate light does not itself render constitutional the subsequent search of the vehicle.

7. Searches and Seizures—Probable Cause—Search of An Automobile—Traffic Violation.

   Police officers may conduct a search of an automobile incident to a lawful arrest for a traffic violation only if they have probable cause to believe that the vehicle contains contraband.

8. Searches and Seizures—Probable Cause—Search of An Automobile—Evasive Action.

   An obviously evasive action by a person who is aware that he is being observed by the police is one factor to be considered in deciding whether the police had probable cause to conduct a search without a warrant, but a mere furtive gesture standing alone is not sufficient to create probable cause to search an automobile.

9. Searches and Seizures—Probable Cause—Search of An Automobile—Evasive Action.

   A police officer did not have probable cause to search an automobile which was stopped for failure to have a license plate light when he noticed the defendant drop what appeared to be a medicine vial between the door and the seat of the vehicle when he knocked on the window next to the defendant where he had no reason to believe that the car contained contraband when he stopped it, he had no idea whether there was anything in the vial and if so whether it was contraband, and there could have been several explanations other than a furtive gesture for defendant's dropping the vial.

10. Searches and Seizures—Probable Cause—Search of An Automobile—Police Inquiry—Negative Response.

   The fact that defendant denied dropping anything on the floor of an automobile did not alone give the police probable cause to search the vehicle because the denial was merely a refusal to cooperate and probable cause must be based on specific facts and circumstances other than a negative response.

11. Searches and Seizures—Probable Cause—Search of An Automobile.

   Police officers did not have probable cause to conduct the search of an automobile which resulted in the seizure of a medicine vial containing heroin where the automobile was stopped for

failure to have a license plate light; the defendant's act of dropping a medicine vial between the seat and door of the vehicle when an officer tapped on his window did not constitute a furtive gesture sufficient to give the officer probable cause to believe that it contained contraband, the defendant's denial that he had dropped anything did not raise the officer's suspicion to the level of probable cause, and no other facts existed to give the officers probable cause to believe that the vehicle contained contraband.

Appeal from Macomb, Walter P. Cynar, J. Submitted Division 2 April 5, 1972, at Detroit. (Docket No. 9339.) Decided May 24, 1972. Leave to appeal denied, 388 Mich 791.

Nelson Pitts was convicted of unlawfully possessing a narcotic drug. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*John J. Miller,* for defendant on appeal.

Before: LEVIN, P. J., and BRONSON and VAN VALKENBURG,* JJ.

BRONSON, J. Defendant was convicted by a judge in the Macomb County Circuit Court of unlawfully possessing a narcotic drug in violation of MCLA 335.153; MSA 18.1123. He was sentenced to a prison term of from two to ten years. He appeals as of right.

This case involves the right of the police to search an automobile based on a furtive gesture. The facts follow. On September 18, 1969, Michigan

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

State Police troopers Curtis Fonger and Steven
Miller were patrolling the Van Dyke-29 Mile Road
area in Washington Township. At approximately
8:30 p.m., they observed the car in which defend-
ant was riding come to a stop at the intersection of
Jewell Road and 29 Mile Road. The officers stop-
ped behind the car and noticed that it had no
license registration light. As a consequence of this
observation, the officers stopped the car. Both
officers exited their vehicle and approached the car
in which the defendant was riding from the rear.
Officer Fonger approached the driver's side while
Officer Miller went to the passenger side. As he
approached the door on defendant's side, Officer
Miller shined his flashlight into the car and saw
the top of what appeared to be a small prescrip-
tion bottle in defendant's right hand. From a
position approximately one and one-half feet be-
hind the passenger seat near the car window,
Officer Miller tapped on the window and observed
the defendant put his hand between the seat and
door and drop the bottle. The officer tapped again
and defendant rolled down his window. Officer
Miller then asked defendant what he had dropped
on the floor and defendant denied dropping any-
thing on the floor. Defendant was then asked to
leave the car and acquiesced in Officer Miller's
request to search the car. During the ensuing
search, the vial was discovered under the passen-
ger seat. Subsequent analysis revealed that the
vial contained two packets of heroin.

Defendant raises two issues on appeal. Because
we believe that the search which produced the vial
of heroin violated defendant's constitutional right
against illegal search and seizure, we need not
consider these two issues. We reverse.

At the outset we are met by the fact that this

issue was not raised below or here on appeal by defendant's attorney. Ordinarily we do not review errors not properly preserved for appeal. However, where the failure to preserve a constitutional right is a mistake of sufficient importance, an appellate court may be obliged to grant a defendant a new trial. While the Constitution does not guarantee that a lawyer will not err in his conduct of a trial, it does guarantee a fair trial. It is thus our duty to protect a defendant's rights as part of our power to control the administration of justice where the trial attorney has failed to do so. The proper standard for granting a new trial is whether the mistake was of such serious importance that, had it been raised below, the defendant might not have been convicted. *People v Degraffenreid,* 19 Mich App 702, 715–716 (1969). It is clear then that when a right is not properly preserved below, an appellate court must examine the evidence to see if (1) it was erroneously admitted, and (2) if its exclusion would probably have meant acquittal for the defendant. *People v Gunn,* 34 Mich App 106 (1971). There is no question that, if the heroin had been excluded, defendant would have been acquitted. The issue for our discussion is whether the evidence is admissible.

On the facts before us, we cannot hold that a valid consent to this search was given. To constitute a voluntary consent to a warrantless search, the record should indicate that the accused was advised of his rights, informed that he need not submit to the search, and that the fruits thereof could be used against him. *People v Zeigler,* 358 Mich 355 (1960).

There is no question that the police had a right to stop the car in which defendant was riding for a minor traffic offense. This fact, however, does not

render constitutional the search of the vehicle. *People v Gonzales,* 356 Mich 247 (1959). A police officer may, incident to a lawful arrest for a traffic violation, search for items which are illegal for the accused to possess. To do so, however, the officer must have probable cause to believe that the motorist possesses contraband. *Grundstrom v Beto,* 273 F Supp 912 (ND Tex, 1967); *People v Gonzales, supra.* Stated another way, the officer must act on some fact or circumstance or upon some such information that would create in his mind a reasonable and honest belief that the law was being violated. *People v Goss,* 246 Mich 524, 525–526 (1929).

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v United States,* 338 US 160, 175; 69 S Ct 1302, 1310; 93 L Ed 1879, 1890 (1949).

Officer Miller acted on defendant's "furtive gesture" and his negative reply to the question put to him. Under the circumstances revealed on this record, we do not believe defendant's actions were sufficient to create probable cause for the search.

The question of when a furtive gesture creates probable cause to justify a warrantless search is one that has been considered several times by our courts. In *People v Evans,* 3 Mich App 1 (1966), the defendant was discovered at 4:45 a.m. crouched behind a trash can after the police had observed him walking rapidly. He was found holding a package containing liquor. The Court held that the search was reasonable. In doing so, the Court reviewed the applicable cases and stated, at pp 4–7:

"The most recent case is *In re Winkle* (1964), 372 Mich 292, which upheld the search of an automobile and the seizure of burglary tools contained therein by State Police officers, who stopped the car for a traffic violation at 2 a.m. The search was made after the officers were informed that the car was not registered in the name of either occupant, the occupants were from Indiana, the driver displayed a Florida driver's license, and they were told radically conflicting stories by each of the two occupants as to their residence, destination, the purpose of their trip, and the length of their intended stay. The Court held that all these circumstances justified the search.

"In *People v Kuntze* [(1963), 371 Mich 419], the court held a search and seizure under somewhat different circumstances to be reasonable. In that case, State Police troopers had been notified that occupants of a car were 'shining' deer in a field and that a shot had been heard. As the troopers approached the vicinity in which the shot had been heard, they saw the defendant's car turn off into a side road and then go to a nearby farmyard, where the officers knew they had no right to be, and where the headlights on the defendant's car were extinguished. A few hundred feet beyond the side road, on to which the defendants had turned, the officers came upon another car, stopped alongside the highway. The occupants of this car informed the officers that their car was not operating properly and, upon the officers' request, they voluntarily opened the car's trunk. Finding nothing, the officers returned to their patrol car. They then noticed the headlights of defendant's car had been turned on again and that defendant's vehicle was returning to the highway. As defendant's car drove by, the officers noticed it did not have a light illuminating its license plate. They then pulled up alongside the left side of defendant's car and signalled defendants to stop, by turning on the patrol car's oscillating roof light and spotlight, and by sounding its horn. When defendants failed to respond to their signals, the troopers swung in behind the defendant's car and flashed their spotlight into the rear window of defendant's car as a signal to stop. The spotlight revealed to the officers two of the defendants bending

forward and moving their shoulders and arms in what seemed to them to be an effort to stuff an object under the front seat on which all the occupants were sitting. The defendant's car then stopped and the patrol car stopped behind it. As the troopers approached the car, one of them noticed what appeared to be blood spots and smears on the shoulders and backs of the white sweat shirts of the two passengers in defendant's car. He thereupon ordered them out of the car. As they got out, the other trooper observed in the beam of his flashlight a leg of a deer protruding from under the front seat. He then ordered the driver out of the car and extracted the hind quarter of a deer. The court held that the blood-spattered appearance of two of the defendants, the defendants' brief detour into the farm-yard, their delay in responding to the police officers' signal to stop their car, and the furtive actions of the blood-spattered defendants during the chase together constituted probable cause to believe that the defendants had committed a felony or were in the process of committing a felony.

"The facts in *People v Lewis* (1934), 269 Mich 382, bear a closer similarity to the facts of the instant case. After dark, one evening, Detroit police officers saw a car not properly displaying a rear light pass their cruiser at a high rate of speed. They overtook the car within a distance of two blocks and stopped it at the curb. It was occupied by the defendant and another man who was driving. When they halted the car, the officers saw the defendant fumbling in his coat pocket with his right hand. The officers thereupon placed the defendant under arrest and searched him, and a .380 Colt automatic pistol was found in his pocket. The Court unanimously held the search in that case to be reasonable, under all these circumstances.

"*People v Licavoli* (1928), 245 Mich 202, is quite similar in its facts to the *Lewis Case.* The arresting officers had found the defendant sitting in a parked car one afternoon and drove up alongside the car because they had been looking for the defendant to question him. As the police drove up, the defendant started squirming around as if he were going for something in his pocket. The officers jumped out of their cruiser and

walked over to the side of the car in which the defend-
ant was sitting because they thought the defendant was
going to get a gun. One of the officers drew his gun,
took the defendant out of the car, and arrested him. An
immediate search revealed a .45 caliber pistol which
the defendant had stuck down the back of his trousers.
Under those circumstances, the Supreme Court sus-
tained the trial court's denial of defendant's motion to
suppress the evidence."

Subsequent to *Evans, supra,* this Court decided
*People v Reeves,* 23 Mich App 183 (1970), and
*People v Hall,* 40 Mich App 329 (1972). In *Reeves,*
two police officers observed the defendant run
from a hotel and enter a legally parked cab. As
they approached the cab, they saw the defendant
remove an envelope from his stocking and throw it
on the floor. One of the officers opened the cab
door and removed the envelope; the envelope con-
tained cocaine. This Court reversed defendant's
conviction. We held that merely seeing defendant
drop the envelope did not create probable cause
for arrest. At most, it gave rise to a general
suspicion. 23 Mich App at 188.

In *Hall, supra,* two officers stopped defendants'
van when they observed that only one headlight
was operating. While one of the officers was advis-
ing the driver of the reason for the stop, defendant
Hall was seen, for the first time, laying in the back
of the vehicle. One of the officers then went to the
back of the van and shined his flashlight in to see
who or what was there. As the officer was doing
this, defendant Leach took his jacket, which was
draped over the driver's seat, and dropped it into
the back seat. Just before it hit a mattress which
was in the rear of the van, the officer observed a
clear plastic bag and a clear plastic bottle. The
jacket was thrown over these two items. On ob-
serving this movement, the officer entered the

vehicle and uncovered the bag and bottle. They contained marijuana. This Court affirmed the convictions. We held that defendant Leach's actions after the officer shined his light into the van created a strong inference that he was attempting to conceal something from the police.

*Hall* relies on *People v Evans,* 3 Mich App 1, 7 (1966), to summarize the law with regard to furtive gestures in Michigan:

> "All of these cases seem to be based upon the theory that when a person, upon discovering that he is being observed by the police, takes obviously evasive action, he gives the police reasonable cause to believe that he is committing or has committed a felony or is in the process of committing a misdemeanor, thereby justifying immediate search and seizure. This Court concludes, therefore, that the defendant Evans, by evading and hiding from the police, gave them sufficient reason to make immediate search and seizure."

See, also, *People v Torralva,* 17 Cal App 3d 686; 94 Cal Rptr 900 (1971); *People v Charles Wilson,* 27 Mich App 171 (1970). We agree that an obviously evasive action by a person who is aware that he is being observed by the police is one factor to be considered in the probable cause formula. *United States v Day,* 331 F Supp 254 (ED Pa, 1971). However, a close examination of the Michigan cases reveals that a mere furtive gesture standing alone does not create probable cause to search an automobile. The reason for this was best stated in *People v Superior Court of Yolo County,* 3 Cal 3d 807, 817–818; 91 Cal Rptr 729, 734–735; 478 P2d 449, 454–455 (1970):

> "The theory, of course, is that although the officer does not actually *see* any contraband from outside the vehicle, he may reasonably *infer* from the timing and direction of the occupant's movements that the latter is

in fact in possession of contraband which he is endeavoring to hide. From the viewpoint of the actor, the theory rests on a sound psychological basis: 'It is a natural impulse on confrontation to hide immediately any contraband' *(People v Jiminez* [1956], 143 Cal App 2d 671, 674; 300 P2d 68, 70). We can posit that sudden efforts at concealment, like flight from the scene of a crime, may well be expressions of consciousness of guilt. On the other hand, the same motion may in fact have an entirely innocuous purpose: 'It is recognized that a person's reasons for concealment may run the whole spectrum from the most legitimate motives to the most heinous' *(People v Weitzer* [1969] *supra,* 269 Cal App 2d 274, 292; 75 Cal Rptr 318, 330).

"The difficulty is that from the viewpoint of the *observer,* an innocent gesture can often be mistaken for a guilty movement. He must not only perceive the gesture accurately, he must also interpret it in accordance with the actor's true intent. But if words are not infrequently ambiguous, gestures are even more so. Many are wholly nonspecific, and can be assigned a meaning only in their context. Yet the observer may view that context quite otherwise from the actor: not only is his vantage point different, he may even have approached the scene with a preconceived notion—consciously or subconsciously—of what gestures he expected to see and what he expected them to mean. The potential for misunderstanding in such a situation is obvious.

"It is because of this danger that the law requires more than a mere 'furtive gesture' to constitute probable cause to search or to arrest. The United States Supreme Court recently reaffirmed this rule in the case of *Sibron v New York* (1968) 392 US 40, 66–67; 88 S Ct 1889, 1904; 20 L Ed 2d 917, 937: 'deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and *when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime,* they are proper factors to be considered in the decision to make an arrest.' (Italics added.) That knowledge, of course, may be derived from the usual twin sources of information and observation; stating the rule for California, the

court in *People v Tyler* (1961), 193 Cal App 2d 728, 732; 14 Cal Rptr 610, 612, declared: 'As it is the information known to the police officers or the suspicious circumstances which turn an ordinary gesture into a furtive one, it is equally clear in this state that in the absence of information or other suspicious circumstances, a furtive gesture alone is not sufficient * * * .' "

*People v Kuntze,* 371 Mich 419 (1963), *People v Lewis,* 269 Mich 382 (1934), and *People v Licavoli,* 245 Mich 202 (1928), are all distinguishable from the instant case. In *Kuntze,* the contraband was in "plain view". See, also, *People v McDonald,* 13 Mich App 226 (1968); *People v Alexander,* 26 Mich App 321 (1970). In *Lewis* and *Licavoli,* the defendants themselves, not the cars in which they were riding, were searched under circumstances which justified a protective search for the officers' safety. See *Grundstrom v Beto, supra.*

In *In re Winkle,* 372 Mich 292 (1964); *People v Evans,* 3 Mich App 1 (1966); and *People v Hall,* 40 Mich App 329 (1972), the searches were justified under the total circumstances known to the officers at the time of each search. In *Winkle,* it was the totality of circumstances; no registration for the car, an Indiana license plate on the car while the driver had a Florida license, and the variance in stories given by the occupants. In *Evans* and *Hall,* the defendants' actions were such that it was *obvious* the defendants' actions were motivated by a desire to hide something.

In the instant case, the circumstances did not justify the search. When the officers stopped the car in which defendant was riding they had no reason to believe that he had contraband in his possession. The movement which Officer Miller saw was not as obviously evasive as those found in *Evans* and *Hall.* See, also, *People v Torralva, supra.* While Officer Miller did see defendant drop

something, there could have been several explanations for it, *i.e.,* it could have been dropped accidentally as defendant was going to roll down the window. The officer had no idea whether anything was in the bottle and, if so, whether it was contraband. Defendant could have been hiding any number of things from the police. The officer thus had to infer that defendant's actions were evasive; that something was in the vial and that, if something was in the vial, it was contraband. At most, the officer had a mere suspicion. See, *e.g., United States v Day, supra.* Mere suspicion is not probable cause.

The fact that the defendant denied dropping anything does not raise the officer's suspicion to probable cause. The officer's inquiry was reasonable to allay any suspicions he may have had. Defendant had three options: he could have explained his actions, consented to a search, or refused to cooperate. In effect, defendant chose the last option. In such a case, probable cause must be based on specific facts and circumstances other than a negative response. *Gallik v Superior Court of Santa Clara County,* 5 Cal 3d 855; 97 Cal Rptr 693; 489 P2d 573 (1971). In the instant case there were no such facts or circumstances. There being no probable cause to believe that defendant possessed contraband, the search of the car in which he was riding was invalid and the evidence obtained as a consequence of it was inadmissible.

Reversed and remanded.

All concurred.