PEOPLE v OBADELE
PEOPLE v GORDON
PEOPLE v LOVE

1. SEARCHES AND SEIZURES—AUTOMOBILES—MOTOR VEHICLES—REASONABLENESS.

The rules with respect to stopping, searching, and seizing of motor vehicles are: (1) reasonableness is the test that is to be applied for both the stop of and the search of moving motor vehicles, (2) said reasonableness will be determined from the facts and circumstances of each case, (3) fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved than if a house or a home were involved, and (4) a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search are conducted by the police.

2. SEARCHES AND SEIZURES—AUTOMOBILES—PROBABLE CAUSE—STOLEN VEHICLES—FURTIVE GESTURES—FAILURE TO STOP.

A furtive gesture alone, such as bending over, is not sufficient probable cause to support the search of an automobile, but when the investigating officers have information that the vehicle was stolen, and the vehicle continues at a slow rate of speed after the occupants are ordered to stop and two passengers bend down, apparently putting something under the front seat, the police have reasonable grounds to believe that occupants were in possession of tools or evidence of a crime or contraband and have sufficient probable cause for a search.

3. SEARCHES AND SEIZURES—SEARCH INCIDENT TO ARREST—INVENTORY SEARCH—DRUGS AND NARCOTICS.

A search of a suspect which is conducted at a police station

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 68 Am Jur 2d, Searches and Seizures §§ 16, 43, 45, 99.
  Validity, under federal Constitution, of warrantless search of automobile—Supreme Court cases. 26 L Ed 2d 893.
[2, 3] 68 Am Jur 2d, Searches and Seizures § 96.
[3] 68 Am Jur 2d, Searches and Seizures §§ 34, 57, 106.
  Lawfulness of "inventory search" of motor vehicle impounded by police. 48 ALR3d 537.

subsequent to his arrest, which reveals a controlled substance, cannot be justified as being incident to a valid arrest, but is a proper inventory search and the controlled substance obtained thereby is admissible in evidence.

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 November 6, 1974, at Detroit. (Docket Nos. 19054, 19055.) Decided January 29, 1975.

Defendants Imari Obadele, Albert Love, and Earl Gordon were charged with carrying a dangerous weapon in an automobile and defendant Obadele was also charged with possession of a controlled substance. From an order suppressing evidence the people appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Ruth Ritter,* for defendants on appeal.

Before: J. H. Gillis, P. J., and Allen and W. R. Peterson,* JJ.

J. H. Gillis, P. J. On August 10, 1973 defendants, Albert Love, Imari Obadele and Earl Gordon, were arrested and charged with carrying a dangerous weapon in an automobile, MCLA 750.227; MSA 28.424. Defendant Obadele was also charged with possession of a controlled substance (phencyclidine) contrary to MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b).

At the preliminary examination uncontroverted

---

* Circuit judge, sitting on the Court of Appeals by assignment.

testimony established the following: At approximately 3:45 a.m. on August 10, 1973, arresting officer James Gizicki and his partner were patrolling the vicinity of Grand River and McGraw streets in Detroit in a marked scout car. Officer Gizicki observed that a 1964 Chevrolet sedan, traveling in front of them, bore Michigan license plate JFR-634. This license number was listed on the "hot sheet" indicating that the car had been stolen. After the police dispatcher confirmed that the Chevrolet was a stolen vehicle, Gizicki, over the scout car loudspeaker, ordered the vehicle's driver, defendant Love, to pull the car over to the curb and stop.

Love pulled over to the curb, but continued driving at a slow rate of speed, about three–five miles an hour. During this time Officer Gizicki observed Obadele in the front passenger seat and Gordon in the right rear seat bend down out of sight. Again, Gizicki announced over the loudspeaker for the vehicle to stop and for everyone in the vehicle to sit upright and to keep their hands out in the open. This time everyone in the vehicle complied with the order.

Officer Gizicki approached the vehicle from the driver's side and his partner, Officer Dameron, approached the vehicle from the passenger's side. Defendant Love did not have the automobile registration; he told the officers that the car belonged to defendant Gordon. Gordon was asked if he had proof of ownership and he stated that he did not. The three defendants were ordered out of the vehicle, and each was searched. Officer Gizicki[1]

---

[1] There is some confusion in the preliminary examination transcript as to who searched the vehicle. Defendants contend that it was one of the officers from another police cruiser that had arrived earlier to assist in the arrest. There is support for defendants' position in the record. However, we have read the record carefully and determine

went into the vehicle and looked under the right front seat. There he found and seized a .38 caliber blue steel revolver and a .32 caliber blue steel revolver and holster.

Defendants were taken to the second precinct. There a custodial search of defendant Obadele was conducted. Three vials, two containing a liquid and one a powder, were found in a leather purse-type pouch on the right front of his belt. A subsequent chemical analysis identified the contents of one of the vials as 2.4 grams of powder containing phencyclidine, a controlled substance.

After the preliminary examination, defendants were bound over for trial as charged. Defendants filed a motion to suppress evidence and quash the information. On October 3, 1973, the trial court heard the motion and concluded that the guns and drugs were seized as a result of unlawful searches and seizures. The motion was granted and the case dismissed. The people appeal.

First, the people argue that the search of the car and the seizure of the guns was proper.[2] *People v Whalen,* 390 Mich 672, 682; 213 NW2d 116, 121 (1973), established the following rules to be applied to the automobile searches:

"1. Reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles.

"2. Said reasonableness will be determined from the facts and circumstances of each case.

"3. Fewer foundation facts are necessary to support a

___

that the fairest and most logical interpretation of that record is that Officer Gizicki conducted the search.

[2] We note that there is a serious question as to whether or not defendants have standing to object to a search of a stolen vehicle. *People v Weaver,* 35 Mich App 504; 192 NW2d 572 (1971). However, the people did not raise this issue below nor do they raise it on appeal. Therefore, we do not decide it here.

finding of reasonableness when moving vehicles are involved, than if a house or a home were involved.

"4. A stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police."

We hold that under the facts and circumstances of this case the search and seizure was reasonable. At 3:45 a.m. the police observed a stolen car traveling in downtown Detroit. Instead of stopping when ordered to do so by the police, the defendants, apparently stalling, continued driving at about three–five miles per hour. While driving at this slow rate of speed, and knowing that they would soon be stopped and questioned by the police, the two passengers bent down out of sight, apparently putting something under the front seat. We think these facts, when viewed in their totality, gave the police reasonable grounds to believe that defendants were in possession of tools or evidence of a crime, or contraband.

Defendants, citing *People v Reeves,* 23 Mich App 183; 178 NW2d 115 (1970), and *People v Pitts,* 40 Mich App 567; 199 NW2d 271 (1972), contend that a furtive gesture alone, such as bending over, is not sufficient to support an automobile search. We agree. However, in this case we have more than a furtive gesture. The information known to the police at the time of the arrest and the suspicious circumstances surrounding the stop, considered together with the furtive gesture, create probable cause for this search.

Several Michigan cases have upheld searches where the facts were similar to those here. In *People v Evans,* 3 Mich App 1; 141 NW2d 668 (1966), two Detroit police officers, at 4:45 a.m., observed defendant walking rapidly and carrying a

package. The officers followed defendant in their squad car, and eventually discovered him in an alley hiding behind a garbage can. A search of the package and defendant's clothing uncovered numerous bottles of liquor. Defendant was subsequently charged with breaking and entering. This Court held the search valid, concluding that defendant "by evading and hiding from the police, gave them sufficient reason to make immediate search and seizure." *Evans, supra,* 3 Mich at 7; 141 NW2d at 670.

In *People v Hall,* 40 Mich App 329; 198 NW2d 762 (1972), the three defendants were driving on I-94 at 4 a.m. when police officers noticed that their van had only one headlight. The officers stopped the van and while one of the officers was talking with the driver, reference was made to defendant Hall who was lying on the back seat. The other officer shined his flashlight in the back seat. He saw Hall and for a moment saw a clear plastic bottle and a clear plastic bag. Almost simultaneously with this observation, the driver dropped a jacket over the bag and bottle. The police seized the bag and bottle, which upon examination were found to contain marijuana. This Court in upholding the seizure, said:

"Although the officer had no reason to be suspicious of the contents of the plastic bottle and the plastic bag from the fleeting glance he got of those objects before the jacket fell on top of them, the fact that he did notice those objects was sufficient to give him probable cause to believe that defendant Leach was attempting to hide the contents from him."

See also, *People v Lewis,* 269 Mich 382; 257 NW 843 (1934); *In re Winkle,* 372 Mich 292; 125 NW2d 875 (1964).

In *United States v Green,* 151 US App DC 35; 465 F2d 620 (1972), the United States Court of Appeals for the District of Columbia was faced with a case similar to the one at bar. There the police observed defendant's car run a stop sign. The officers turned on their flashing red dome light, preparing to make a routine traffic stop. Then they saw defendant bend over with his arm in front of his body, apparently putting something under the seat. On stopping the vehicle one of the officers looked under the seat and seized a fully loaded pistol. On these facts the Court held the search valid.

Having determined that the seizure of the gun in the instant case was reasonable, we hold that the trial court erred in dismissing the carrying-a-dangerous-weapon charge against defendants Love, Obadele and Gordon.

Lastly, the people contend that the seizure of the phencyclidine was proper. This search and seizure cannot be justified as being incident to a valid arrest. *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974). However, the search of Obadele at the station house was a proper "inventory search" and the controlled substance obtained thereby should not have been suppressed. *People v Robinson,* 388 Mich 630; 202 NW2d 288 (1972); *People v Kremko,* 52 Mich App 565; 218 NW2d 112 (1974).

We reverse the trial court's order and remand for proceedings consistent herewith.