## PEOPLE v BOUDAH

1. SEARCHES AND SEIZURES—AUTOMOBILES—PROBABLE CAUSE—FURTIVE GESTURES—NIGHTTIME—EVASIVE ACTIONS.

A furtive gesture alone does not constitute probable cause to search an automobile, but nighttime searches premised upon furtive and evasive actions are generally upheld.

2. SEARCHES AND SEIZURES—WEAPONS—POLICEMEN—LIMITED SEARCH—CRIMINAL ACTIVITY—DANGEROUS PERSONS—EXPERIENCE.

A police officer, based upon his experience and observations, may conduct a limited search for weapons to protect himself where he has reason to believe that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, even though the officer lacks probable cause to arrest those persons.

3. SEARCHES AND SEIZURES—POLICEMEN—TIME—SUSPECTS—PLACE—BEHAVIOR OF SUSPECT—LIMITED SEARCH—WEAPONS—EVIDENCE.

An officer who has reason to fear for his safety in light of the area in which he discovers a suspect, the time at which the discovery takes place, and the behavior of the suspect, may make a limited search of the suspect for weapons to insure his safety; and, any weapons seized as a result of the search are admissible at trial.

4. SEARCHES AND SEIZURES—AUTOMOBILES—PLAIN VIEW DOCTRINE—WEAPONS—EVIDENCE.

A police officer acted properly in ordering a suspect to exit a vehicle where the vehicle was properly stopped for a traffic violation at about 2:45 a.m., and the suspect acted as though he was trying to hide something; therefore, a weapon discovered in plain view lying on the seat where the suspect had been sitting was properly seized under the plain view doctrine and admitted at trial.

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures § 40.

Search and seizure: "Furtive" movement or gesture as justifying police search. 45 ALR3d 581.

[2–4] 68 Am Jur 2d, Searches and Seizures §§ 23, 58.

Appeal from Wayne, James N. Canham, J. Submitted Division 1 April 16, 1975, at Detroit. (Docket No. 20358.) Decided May 30, 1975.

Richard P. Boudah was convicted of carrying a concealed weapon. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Ronald P. Weitzman,* Assistant Prosecuting Attorney, for the people.

*Durant, Talbot, Grant & McQuarrie,* for defendant on appeal.

Before: ALLEN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

PER CURIAM. A trial court, sitting without a jury, convicted defendant on January 9, 1974, of carrying a concealed weapon in an automobile, MCLA 750.227; MSA 28.424. On February 21, 1974, defendant received a sentence of 2-1/2 to 5 years in prison, and has appealed.

The sole issue on appeal is whether defendant's right to be free from unreasonable searches and seizures, US Const, Am IV, and Const 1963, art 1, § 11, was violated when, after stopping the vehicle in which defendant was a passenger, a police officer ordered defendant out of the vehicle after observing a "furtive gesture" and discovered a revolver on the front seat of the vehicle where defendant had been sitting.

On October 23, 1973, about 2:45 a.m., two Taylor police officers spotted a Ford van speeding on eastbound Van Born Road heading towards US 24.

The officers pulled the vehicle over, and one of the officers approached the driver of the van to advise him of the nature of the stop. Officer Patrick Drake, pursuant to a personal as well as departmental policy, also exited the police vehicle, and approached the van from the passenger side. He then observed defendant, the passenger in the van, holding his right hand towards the back of his body. While slightly leaning towards the window, defendant moved his arm up and down, and the officer concluded that defendant was trying to hide something. The officer made these observations while standing next to the passenger door looking through the window. The officer told defendant to exit the vehicle. Defendant did not move and the officer repeated the instruction, whereupon defendant stepped out of the van. Once defendant left his seat, the officer, while looking inside the van and without actually entering it, saw a revolver lying upon the front seat near where the back and bottom portions of the seat came together. Defendant was then placed under arrest.

*People v Nelson Pitts,* 40 Mich App 567, 576; 199 NW2d 271 (1972), *lv den,* 388 Mich 791 (1972), referred to some Michigan cases, and said that "a mere furtive gesture standing alone does not create probable cause to search an automobile". In *Pitts,* it was held that the officer's action in searching a car in response to defendant's "furtive gesture" and a negative reply to an officer's question did not create probable cause for search. 40 Mich App at 572. On the other hand, the Court in *People v Hall,* 40 Mich App 329, 340; 198 NW2d 762 (1972), found that a police officer, having noticed a plastic bottle and plastic bag and defendant's action in throwing a jacket over these objects in an attempt to hide the contents thereof, had

probable cause to order defendants out of the van, enter the back of the van and seize the objects. Likewise, *People v Evans,* 3 Mich App 1, 7; 141 NW2d 668 (1966), found that defendant's evasive action in hiding behind a trash receptacle gave the police officers reasonable cause to believe that defendant was committing or had committed a crime, therefore justifying their immediate search of defendant and seizure of some liquor bottles and some money.

As indicated, the above cases dealt with whether or not furtive or evasive gestures were sufficient to support a finding of probable cause. Furtive gestures, with nothing more, generally do not support a finding of probable cause. *Pitts, supra, People v Obadele,* 58 Mich App 139; 227 NW2d 258 (1975), and 45 ALR3d 581, Anno: *Search & Seizure: Furtive Movement or Gesture as Justifying Police Search,* §§ 2–3, pp 585–587. Although there are some cases to the contrary, it seems that nighttime searches premised upon furtive and evasive actions are generally upheld. 45 ALR3d 581, § 10, p 599. However, the instant case may be sustained on a finding of less than probable cause, and it is unnecessary for us to determine whether defendant's "furtive" action may have been sufficient to support a finding of probable cause to search the van.

*Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972), govern the situation present herein. *Terry* held that a police officer, based upon his experience and observations, may conduct a limited search for weapons if he has reasons to believe that "criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous

* * * ". 392 US at 30; 88 S Ct at 1884; 20 L Ed 2d at 911. Despite the fact that the police officer lacked probable cause to arrest defendant, *Terry* said that the officer was entitled to conduct a limited "search" to protect himself. Although probable cause was not necessary, and although an "unparticularized suspicion or 'hunch' " will not support the officer's actions, the officer may act upon "specific reasonable inferences which he is entitled to draw from the facts in light of his experience". 392 US at 27; 88 S Ct at 1883; 20 L Ed 2d at 909.

*Adams* applied *Terry,* and upheld the seizure of a pistol from a person in a parked car. Acting pursuant to an informant's tip, a police officer, at about 2:15 a.m. in a high crime area, approached defendant's vehicle and asked him to step out. Defendant instead rolled the window down, and the officer then reached through the window and grabbed the pistol out of defendant's waistband. Relying upon *Terry, supra, Adams, supra,* said that despite the absence of probable cause, a police officer should not simply "shrug his shoulders and allow a crime to occur or a criminal to escape". 407 US at 145; 92 S Ct at 1923; 32 L Ed 2d at 616. The court held that the officer had reason to fear for his safety in light of the area in which the defendant was discovered, the time at which the incident took place, and the fact that rather than complying with the officer's request to exit the vehicle, defendant rolled down his window. *Adams, supra,* held that the police officer's action in reaching to the spot where he had been told the pistol was hidden (the officer could not see the weapon from where he was standing) was a "limited intrusion to insure his safety" and that the weapon seized as a result of the officer's action was prop-

erly admitted at trial. 407 US at 147–148; 92 S Ct at 1924; 32 L Ed 2d at 618.

In the instant case, the vehicle in which defendant was a passenger was stopped at 2:45 a.m. The propriety of that stop was neither questioned at the trial court nor on appeal. The officer, standing near the van looking through the passenger window, observed defendant engaged in the above-described actions, and asked defendant to exit the vehicle. Defendant failed to do so upon the officer's first request, and the officer once again requested defendant to step out of the van. At that time defendant did so, and the officer, without entering the van and without conducting a search thereof, discovered the weapon.

Pursuant to *Terry, supra,* and *Adams, supra,* we find that the officer acted properly in ordering defendant to exit the van. The officer then discovered the weapon in plain view lying on the seat where defendant had been sitting. No search of the van was conducted, and the plain view doctrine applies to uphold the seizure and subsequent admission of the pistol into evidence at the trial. *People v Whalen,* 390 Mich 672, 681–683; 213 NW2d 116 (1973).

Affirmed.